**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

———————————————————

| | | |
|---|---|---|
| **GREGORY CHURCHILL, et al.** | : | |
| **on behalf of themselves and all** | : | |
| **other similarly situated individuals** | : | |
| | : | **Case No. 4:06-CV-4023** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FARMLAND FOODS, INC.,** | : | **CLASS ACTION** |
| | : | **Honorable Michael M. Mihm** |
| **Defendant.** | : | **U.S. District Judge** |
| | : | |

———————————————————

**MEMORANDUM OF LAW IN SUPPORT OF PARTIES' JOINT**
**MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY**
**APPROVAL OF SETTLEMENT AND CLASS NOTICE**

**I.    INTRODUCTION**

Representative Plaintiffs Gregory Churchill, et. al., and Defendant Farmland Foods, Inc., ("Farmland") by their respective undersigned counsel, hereby request that the Court conditionally certify the Named Plaintiffs as Class Representatives, certify Plaintiffs' counsel as Class Counsel, preliminarily approve a proposed settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure, and approve the attached Notice of Class Action and proposed Settlement Agreement.

The proposed Order submitted herewith (the "Preliminary Approval Order"), is in the form that accompanies the parties' Settlement Agreement dated as of March 26, 2007 (the "Settlement Agreement").  A copy of the Settlement Agreement, with Exhibits, is attached hereto as **"Exhibit 1."**[1]  The proposed Preliminary Approval Order establishes certain dates for the

---

[1] The parties are also submitting their Letter Agreement dated April 27, 2007, which is an addendum to the Settlement Agreement, under seal contemporaneously with this motion and memorandum of law.

mailing of the Notice of Class Action and Settlement Agreement to Class Members, and the procedure and timing for the filing of objections, if any, to the settlement, or for Settlement Class members to file requests for exclusion from the Settlement Class and the settlement.

In support of this Motion, the parties assert as follows:

## II.    <u>STATEMENT OF THE CASE</u>

This is a class action commenced by Plaintiffs' Representative Action and Class Action Complaint filed in this Court on April 18, 2006.  Plaintiffs subsequently filed their First Amended Class Action Complaint on June 16, 2006 alleging claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.; the Illinois Minimum Wage Act ("MWL"), 802 ILCS 105/1 et seq., and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq ("WPCA").  Plaintiffs allege that Defendant Farmland failed to adequately compensate hourly production employees for their time spent donning, doffing, cleaning, maintaining, and waiting to receive work-related gear, clothing, and equipment, and for all time spent traveling between changing areas and work stations ("donning, doffing, and related activities").

Since the Complaint was first filed, Plaintiffs and Plaintiffs' counsel have engaged in informal discovery to determine, among other things, (i) the substantial benefits to Plaintiffs and the Settlement Class under the terms of the Settlement Agreement, (ii) the attendant risks and uncertainty of litigation, especially in complex actions such as this Lawsuit, as well as the difficulties and delays inherent in such litigation, (iii) the possibility and likelihood of appeals even if Plaintiffs were to prevail on a class-wide basis, and (iv) the desirability of consummating the Settlement Agreement promptly, in order to provide effective relief to Plaintiffs and the Settlement Class.  Plaintiffs and Plaintiffs' counsel agree that this Settlement Agreement is fair, reasonable, and adequate because it provides substantial and immediate monetary relief for

alleged past violations, is in the best interests of the Settlement Class, and resolves fairly the claims alleged in the Lawsuit, and avoids the considerable risks and delays of further litigation.

Counsel for Defendant and counsel for Plaintiffs discussed the merits of the case, the defenses to the claims, and the possibility of a class-wide resolution of the case without the need for further litigation. The parties engaged in four negotiation sessions over five days, on August 3, 2006, October 19, 2006, January 4-5, 2007, and January 12, 2007. The negotiations, conducted on behalf of the parties by experienced and able counsel, were vigorous in nature and were at all times conducted at arm's length. Following these extensive negotiation sessions, the parties reached an agreement in principle to settle this matter on the terms outlined herein and contained in full within the Settlement Agreement. See **Exhibit 1**.

Representative Plaintiffs seek to certify a Settlement Class comprised of the following: "All persons who have been employed as hourly production employees at Farmland Foods Inc.'s Monmouth plant during any time from October 29, 2003, through February 8, 2007, and all hourly employees who are employed in the plant as of February 8, 2007 and working in jobs which are closely associated with the production process." Farmland has expressly warranted, and documents produced by Farmland have confirmed, that there are 2,288 persons that fall within the foregoing Settlement Class definition. Those persons are listed on a list maintained by Farmland and produced to counsel for Representative Plaintiffs.

## III.     ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT

Farmland has agreed to establish a Settlement Fund, in the amount of $977,000.00, which will be used in part to pay the claims of Settlement Class members who are entitled to participate in the distribution of settlement proceeds pursuant to the Settlement Agreement and the accompanying Exhibits. Class Counsel shall apply to the Court for an award of attorneys' fees

and costs to be paid from the Settlement Fund in the amount of 33% of the Settlement Fund

("Attorneys' Fees and Costs Award"), an amount which includes reimbursement of reasonable

out-of-pocket litigation expenses, case costs and a small payment to each named Plaintiff to

compensate them for the time they spent assisting counsel with the investigation of the case.[2]

The Attorneys' Fees and Costs Award shall also be used to pay one-half (1/2) of all

reasonable costs associated with providing direct mail notice of the settlement to the Settlement

Class, and all costs associated with the processing of claims, the distribution of settlement

checks, and all other aspects of administration of the settlement ("Settlement Costs"). Farmland

has also agreed to pay the remaining one-half (1/2) of Settlement Costs, an additional amount

above and beyond the amount of the Settlement Fund to be paid from Farmland operating

expenses.

Farmland has denied liability to the Representative Plaintiffs and the Settlement Class,

and believes that it has numerous and complete defenses to Plaintiffs' Claims. Farmland does

not object to the request for certification solely for settlement purposes. In the event that the

settlement is not finally approved as provided in the Settlement Agreement, the parties agree that

the certification will be set aside and neither this motion, nor the Settlement Agreement, will in

any way prejudice Defendant's right to contest certification or the merits of Plaintiffs' claims on

any legal or equitable grounds.

## IV.    **LEGAL ARGUMENT**

---

[2] The $350.00 reimbursement fee to Representative Plaintiffs will be set aside from the one-third (1/3) amount of the Settlement Fund for attorneys' fees and costs. The $350.00 reimbursement fee will also be paid to an additional three individuals, Leslie Moore, Matt Cole, and Bradley Dennis, who would have been named as additional representative plaintiffs in an amended complaint which was not filed due to the successful settlement negotiations. Farmland agrees that for purposes of this Settlement, these three individuals will be treated as Representative Plaintiffs.

## A.    REQUIREMENTS FOR RULE 23 CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 sets forth the criteria for certifying an action as a class action.  In order for a class to be certified, a class must satisfy all of the perquisites of Rules 23(a) and in addition satisfy at least one of the subdivisions of Rule 23(b).  Rule 23(a) provides: "Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Applying the requirements of Rule 23(a) and Rule 23(b)(3) to this case, it is clear that all prerequisites for class certification have been met, the case should be certified as a class action for settlement purposes, Plaintiffs should be appointed the Class Representatives, and their counsel should be appointed as Class Counsel.

### 1.    Numerosity

The Settlement Class must be so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1).  There is no automatic cut-off point at which the number of plaintiffs makes joinder impracticable, thereby making a class-action suit the only viable alternative.  In re American Medical Systems Inc., 75 F.3d 1069, 1079 (6th Cir. 1996).  See Swanson v. Am. Consumer Indus., Inc., 415 F.2d 1326, 1333 (7th Cir. 1969) (class of 151 stockholders found to be sufficient to establish numerosity).  Here, there were 2,288 persons employed during the Class Period who were allegedly under-compensated for donning, doffing, and related activities.  The Settlement Class has been identified from Farmland's company records, and the list of Settlement Class members has been provided to counsel for the Representative Plaintiffs.  Based

on this, Plaintiffs submit that joinder of all members of the Settlement Class is clearly impracticable. Farmland agrees that the numerosity requirement of Rule 23(a)(1) is met for purposes of certifying a settlement class only.

### 2. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there are questions of law or fact common to the class. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992). If there are genuinely common issues, issues identical across all of the claimants, then it makes good sense, especially when the class is large, to resolve these issues in one fell swoop. <u>Mejdrech v. Met-Coil Systems Corp.</u>, 319 F.3d 910 (7th Cir. 2003).

In this case, virtually all issues of law and fact are common to the Settlement Class, including but not limited to the following basic factual and legal issues that will have to be litigated in this case:

1. Did Defendant fail to adequately compensate the Settlement Class for donning, doffing, and related activities in violation of the Illinois Minimum Wage Law?

2. Did Defendant fail to adequately compensate the Settlement Class for donning, doffing, and related activities in violation of the Illinois Wage Payment Collection Law?

3. Did Defendant fail to adequately compensate the Settlement Class for donning, doffing, and related activities in violation of the FLSA?

These issues of fact and law are common to each and every member of the Settlement Class. Farmland agrees with this assertion for purposes of certifying a settlement class only.

### 3. Typicality

Rule 23(a)(3) requires that claims or defenses of the representative parties are typical of the claims and defenses of the class. The question of typicality in Rule 23(a)(3) is closely related

to the question of commonality.  <u>Rosario</u>, 963 F.2d at 1018.  A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.  <u>De La Fuente v. Stokley-Van Camp, Inc</u>., 713 F.2d 225, 232 (7th Cir. 1983).  Typicality requirement for class certification does not mandate that all class members suffer the same injury as the named class representative.  <u>Id</u>.

After thorough investigation, Plaintiffs' counsel is not aware of any differences between the interests of the Representative Plaintiffs and the interests of all other Settlement Class members.  Rather, the Representative Plaintiffs' claims are typical of the claims of the Settlement Class because the alleged liability of Defendant to each Representative Plaintiff and the Settlement Class arises from the same course of conduct alleged to be in violation of the same statutes and common law claims:  the Fair Labor Standards Act, the Illinois Minimum Wage Law, 802 ILCS 105/1 <u>et seq</u>., and the Illinois Wage Payment Collection Law, 820 ILCS 115/1.  In fact, the Representative Plaintiffs and all Settlement Class members submit that they have precisely the same interest in establishing that Defendants violated these statutes – collecting compensation to which they were allegedly entitled for the donning, doffing, and related activities.

Representative Plaintiffs and each Settlement Class member are and were all hourly production employees of the Defendant at some time during the Class Period in which Defendant allegedly did not fully compensate employees for the donning, doffing, and related activities.  As a result, the Representative Plaintiffs submit that they have claims that are precisely the same as those of all other Settlement Class members, and, thus, proof of the Settlement Class' common claims will prove the Representative Plaintiffs' individual claims.  The Representative

Plaintiffs have no interests that are antagonistic to the Settlement Class, and they have vigorously

pursued the claims on behalf of themselves and the entire Settlement Class.   The Representative

Plaintiffs thus submit that they have demonstrated that their interests are sufficiently aligned with

those of the other Settlement Class members so as to satisfy the typicality requirement.

Farmland agrees with this assertion for purposes of certifying a settlement class only.

### 4.    Adequacy Of Representation

Fed.R.Civ.P. 23(a)(4) requires that the Plaintiffs as representative parties "will fairly and

adequately protect the interests of the class."  This prerequisite is essential to due process,

because a final judgment in a class action is binding on all class members.  Hansberry v. Lee,

311 U.S. 32 (1940).  The adequacy inquiry serves to uncover conflicts of interest between named

parties and the class they seek to represent.  See, General Telephone Co. of Southwest v. Falcon,

457 U.S. 147, 157-58 (1982).  A class representative must be part of the class and possess the

same interest and suffer the same injury as the class members.  Amchem Products, Inc. v.

Windsor, 521 U.S. 591, 625-26 (1997).

The two criteria for determining adequacy of representation are:  (1) the representative(s)

must have common interests with unnamed members of the class, and (2) it must appear that the

representatives will vigorously prosecute the interests of the class through qualified counsel.

Secretary of Labor v. Fitzsimmons., 805 F.2d 682, 697 (7th Cir. 1986).  A class is not fairly and

adequately represented within the meaning of the certification requirement if class members have

antagonistic or conflicting claims.  Rosario, 963 F.2d at 1018.

Plaintiffs assert that the named Plaintiffs are more than adequate representatives for the

members of the class.  The Named Plaintiffs are all current workers at the Defendants' pork

processing plant in Monmouth, Illinois.  See Plaintiffs' First Amended Complaint at ¶¶ 6-30.

Moreover, all of the class representatives are or were production and support workers employed by Defendant at its pork processing plant in Monmouth, Illinois and all sustained the same damages from Defendant's allegedly unlawful compensation system.  See Plaintiffs' First Amended Complaint at ¶ 36.  Farmland agrees, for purposes of settlement certification only, that Plaintiffs have met this requirement under Rule 23(a).

With respect to the adequacy of counsel, Plaintiffs' counsel has successfully represented plaintiffs in both class and individual actions before courts nationwide.  Plaintiffs' counsel is experienced in Fair Labor Standards Act representative actions and  employment class actions generally.  See Smith v. Texaco, 88 F. Supp. 2d 663 (E.D. Tex. 2000) (settlement class certified for African-American workers of Texaco subsidiary Star Enterprise).  Lead counsel Brian McCafferty and Michael Hamilton have represented meat processing workers in class actions and representative actions since 1998.  See Dybevik v. Quality Pork Processors, 2001 WL 811124 (D. Minn. 2001); Lopez v. Tyson Foods, 2006 WL 2668453 (D. Neb. 2006).  Class Counsel can and will adequately represent the class in this action.  See Biography of Class Counsel, attached hereto as **"Exhibit 2."**  Farmland agrees that Class Counsel are adequate representatives for settlement certification purposes only.

### 5.    The Proposed Class Also Satisfies The Requirements Of Rule 23(b)(3)

If the requirements of Rule 23(a) are met, class certification also requires the class representatives to show that they can satisfy one of the alternative requirements of Rule 23(b).  Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997).  Here, the Plaintiffs assert that they meet the requirements for certification under Rule 23(b)(3).  In order for a matter to be certified under Rule 23(b)(3), it is necessary that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  Farmland agrees

that this requirement has been met for purposes of settlement certification only.

The common questions of whether the Settlement Class was deprived of compensation they should have received under the Illinois Minimum Wage Law, FLSA and under the Illinois Wage Payment Collection Law are the sole issues pertaining to the class recovery sought here. The amount of damages which each individual class member is entitled to is the only "individual" issue that would need to be resolved regardless of whether a Settlement Class is approved or whether this case proceeds further in litigation on a class basis. Otherwise, the questions and issues that affect all class members equally are the sole issues in this case and as such, they predominate over any individual issues of the amount of damages in this case. A single adjudication can resolve all issues raised by the class.

In addition, for certification under Rule 23(b)(3), the Court must find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) sets forth four factors for the Court to consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Plaintiffs assert, and Farmland agrees for settlement purposes only, that all four of these factors favor certification of the class for the following reasons.

First, the interest of members to individually control the litigation of their claims is low because the cost of suit is too prohibitive to bring individual actions. Rule 23 governing class actions was designed for situations in which the potential recovery is too slight to support individual actions, but recovery is substantial in the aggregate. Murray v. GMAC Mortgage

<u>Corp</u>., 434 F.3d 948 (7th Cir. 2006).  The individual claims for unpaid minutes of time per day amount to a few hundred dollars are far outweighed by the costs of filing suit, conducting depositions and potentially needing expert witness testimony in the form of a time-study to prove a claim.  Second, no other litigation has been commenced by the class members involved in this case.  Third, there is a desirability to concentrate the claims in this litigation in this judicial district because the sole workplace involved in this case where all claims arose lies in Monmouth, Illinois which is within this judicial district.  Fourth, there should be little if any difficulty managing a class action in this case.  The evidence here is that approximately 2,288 persons are members of the proposed Settlement Class, and the Defendant has readily accessible records to identify Settlement Class members.  The names, addresses, and employment records of these persons are reflected on documents in the possession of Defendant.  There would thus appear to be virtually no management problems and the class action procedure would not be unduly burdensome.

For all of the foregoing reasons, Plaintiffs submit and Farmland agrees this case meets the requirements for certification of a settlement class under the Federal Rules of Civil Procedure, and this Court should preliminarily certify the Settlement Class for settlement purposes only, appoint  all named Plaintiffs (Greg Churchill, et al.) as the Class Representatives and their counsel, Brian P. McCafferty, Esquire of  Kenney Egan McCafferty & Young, Michael Hamilton, Esquire of Provost Umphrey Law Firm and Jairus M. Gilden, Esquire as Class Counsel.

**B.     THE SETTLEMENT SATISFIES THE REQUIREMENTS
        FOR PRELIMINARY APPROVAL**

Federal Rule of Civil Procedure 23(e) provides that a class action may not be compromised or settled without approval of the court.  However, the use of settlement classes to

resolve class action litigation is favorably recognized by federal courts.  The settlement class has

been used by class action plaintiffs and defendants for over two decades and now has become

commonplace in the federal courts as a means to resolve complex litigation.  Manual For

Complex Litigation § 30.45 (3d. ed. 1995).

A district court should approve a settlement if it is "fundamentally fair, adequate and

reasonable" in light of the circumstances of the case.  Bailey v. Great Lakes Canning, Inc., 908

F.2d 38, 42 (6th Cir. 1990).  Settlement is the principal means of resolving civil litigation in the

federal courts.  McDermott, Inc. v. AmClyde, 511 U.S. 202 (1994).  Federal courts look with

great favor upon voluntary resolution of litigation through settlement.  Air Line Stewards and

Stewardesses Association v. Trans World Airlines, 630 F.2d 1164 (7th Cir. 1980).  There is an

overriding public interest in settling litigation and avoiding trials, especially in class action suits.

As the Third Circuit explained in In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab.

Litig., 55 F.3d 768, 784 (3d Cir. 1995):  "The law favors settlement, particularly in class actions

and other complex cases where substantial judicial resources can be conserved by avoiding

formal litigation."  See 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.41 at

11-88 (3d ed. 1992) (citing cases).

As a general rule, approval of a proposed settlement is committed to the sound discretion

of the trial court and the order approving a settlement will not be disturbed absent an abuse of

discretion.  Isby v. Bayh, 75 F.3d 1191(7th Cir. 1996).  In considering the fairness of a potential

settlement, a district court must consider the strength of plaintiffs' case compared to the amount

of defendants' settlement offer, an assessment of the likely complexity, length and expense of

litigation, an evaluation of the amount of opposition to settlement among affected parties, the

opinion of competent counsel and the stage of proceedings and the amount of discovery

completed at the time of settlement.  <u>Synfuel Technologies, Inc. v. DHL Express (USA) Inc</u>., 463 F.3d 646 (7th Cir. 2006).

The proposed settlement reached in this case is fair and reasonable because it is the result of extensive arm's length negotiations conducted by competent counsel with experience in class actions.  <u>Fisher Bros. v. Cambridge-Lee Indus., Inc.</u>, 630 F. Supp. 482, 488-89 (E.D. Pa. 1985); <u>In re McDonnell Douglas Equip. Leasing Sec. Litig.</u>, 838 F. Supp. 729, 738-39 (S.D.N.Y. 1993) ("courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching");  2 Herbert Newberg & Alba Conte, <u>Newberg on Class Actions</u> § 11.41 at 11-88 (3d ed. 1992) ("[t]here is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").

Courts primarily consider the strength of the case for the Plaintiffs on the merits, balanced against the amount offered in the settlement.  <u>Armstrong v. Board of School Directors of the City of Milwaukee</u>, 616 F.2d 305, 314 (7th Cir. 1980).  In addition they consider:  the complexity, expense and length of further litigation; the amount of opposition to the settlement; the presence of collusion in reaching a settlement; the reaction of members of the class to the settlement; the opinion of competent counsel; and the stage of proceedings and the amount of discovery completed.  <u>Id</u>.

The proposed settlement is a fair, reasonable, and adequate settlement of the class action claims.  The provisions of the settlement address the issues raised in the Complaint and serve the needs of the members of the Settlement Class.  The settlement is the product of arm's length negotiations in four sessions over five different days and was executed by experienced counsel following meaningful legal and factual investigation including an on site inspection of the

Farmland Monmouth, Illinois plant on December 7, 2006 conducted by Class Counsel during the full operation of the plant by Defendants. Class Counsel was able to observe Defendants' workers (i.e. the class members) engaged in the donning and doffing activities that are the subject of this litigation. The settlement achieves a favorable result without the risks, costs, and delays of sustained litigation, trial and the inevitable post-trial motions and appeals. In looking at the specific reasons, this Court should conclude that the settlement warrants this Court's approval.

### 1.    The Risk Of Establishing Liability And Damages

No case is risk-free, and this case is no exception. While Plaintiffs believe that their claims have substantial merit, establishing liability against Farmland and collecting a judgment is not a foregone conclusion. Defendants were poised to raise various defenses to both class certification and the merits of the claims, including but not limited to the applicable statutes of limitations and repose, and the doctrines of accord, satisfaction, laches, estoppel, and waiver. Recovery of wages through the Fair Labor Standards Act and under state law are types of cases that are difficult and time-consuming. The Fair Labor Standards Act, 29 U.S.C. § 201, et seq., provides a defendant with various defenses such as the "good faith defense" (See, 29 U.S.C. § 259) (employer can rely in good faith on an interpretation of the FLSA by the Wage and Hour Administrator of the Department of Labor) and the de minimis defense (See Lindow v. United States, 738 F.2d 1057, 1062-63 (9th Cir. 1984)). In fact, some courts have also held that putting on some of the "standard" equipment at a meat packing facility is not even considered "work" as it is defined by the Fair Labor Standards Act. See Reich v. IBP, Inc., 38 F.3d 1123, 1126 (10th Cir. 1994) (holding that requiring employees to show up at their work stations with standard equipment such as a hardhat, earplugs, safety glasses and safety shoes is not work because

putting on those items takes all of a few second and requires little if any concentration).

Moreover, even were the case to proceed to a summary judgment motions or a jury trial, there are recent examples of litigation classes losing on the merits of their claims. <u>See, e.g.</u>, <u>DeAscencio v. Tyson Foods, Inc.</u>, No. 00-CV-4294 (E.D. Pa. 2006) (in similar action relating to claims for donning, doffing and related activities in chicken processing facility, jury verdict in favor of defendant entered June 21, 2006). <u>See also</u> <u>Anderson v. Pilgrim's Pride Corp.</u>, 147 F.Supp. 2d 556 (E.D. Tex. 2001), <u>affirmed per curiam</u>, 44 Fed. Appx. 652 (5th Cir. 2002) (donning and doffing sanitary clothing and equipment at a chicken processing plant not compensable under Fair Labor Standards Act); <u>Pressley v. Sanderson Farms, Inc.</u>, 2001 WL 850017 (S.D. Tex. 2001), <u>affirmed per curiam</u>, 33 Fed. Appx. 705 (5th Cir. 2002) (donning and doffing sanitary clothing and equipment at a chicken processing plant not compensable under Fair Labor Standards Act).

While Plaintiffs were confident of the legal sufficiency of their allegations and that a class would have been certified, these issues could not have been resolved without extensive briefing and argument, and the outcome was at least somewhat uncertain. Defendant Farmland has consistently and emphatically denied the allegations of wrongdoing and asserted that its compensation of its hourly production employees was at all times compliant with all applicable laws. While Plaintiffs disputed this contention, there was at least a colorable basis for Defendant Farmland's position. Moreover, resolution of these issues and the likelihood of appeals if the Plaintiffs prevailed on class certification or on the merits would have contributed to unacceptable delay which would have diminished the ultimate value of any recovery for the Settlement Class. Such delay would be particularly deleterious to the interests of the class members because the turnover of employees in meat processing facilities is enormous and the likelihood of locating

class members who have left employment at Farmland diminishes greatly every year that this litigation proceeds onward.   In light of all of the circumstances, establishing liability was by no means certain and a settlement is preferable when compared to the risks of proceeding forward with the litigation.

**2.**      **Reasonableness of the Class Recovery**

Given the uncertainties attendant to this litigation and the collection issues, the resolution of the litigation represents a substantial recovery for the Settlement Class in light of the best possible recovery.  Farmland has agreed to establish a common fund in the amount of $977,000.00, and, in addition, to provide one-half (1/2) of the Settlement Costs.  Each Settlement Class member is entitled to elect to receive

> (i.)      in the approximate amount of $.60568 for each day worked from October 29, 2003 through July 31, 2006;

> (ii.)      in the approximate amount of $.03697 for each day worked from August 1, 2006 through February 8, 2007;

> (iii.)      $20.00 if they are a current employee of Farmland Foods as of February 8, 2007.

The initial determination of a Settlement Class member's entitlement under the Settlement Agreement will be based on Farmland's records relating to the participating Settlement Class member's employment and Farmland's calculations regarding what each Settlement Class member is due.  Farmland will provide to the Settlement Administrator all information relevant to making this determination.  Settlement Class members do not need to submit any documentation to support their entitlement to the benefits of the settlement, and thus can easily participate in the benefits of this settlement.  Only in the instance that a Settlement Class member disputes the information Farmland provides to the Settlement Administrator would the member need to submit documentation in support of their position.

Additionally, the administration terms of the proposed settlement make this result even

more advantageous for the Settlement Class. Settlement Class members are not required to take

any affirmative action in order to receive distribution from the Settlement Fund; all that is

required for members to receive the distribution is that the Class Notice not be returned as

Undeliverable Mail, the check not be returned as Undeliverable Mail, and that the member elects

not to opt out of the Settlement Agreement. Farmland shall provide the Settlement

Administrator and Class Counsel with:

>   (1) name, social security number, employee number, and last known address of all
>   Settlement Class members;
>
>   (2) hiring and termination dates for each Settlement Class member;
>
>   (3) number of months each Settlement Class member worked during the Class
>   Period;
>
>   (4) number of days during the Class Period each Settlement Class member
>   reported to work; and
>
>   (5) total amount due each Settlement Class member.

Within thirty (30) days after the Preliminary Approval Date, Farmland will attempt to

distribute to all Settlement Class members employed as of the last day of the Settlement Period

the notice form substantially in the form attached to the Settlement Agreement as **"Exhibit B."**

See **Exhibit 1**. Farmland will also provide the Settlement Administrator with the last known

addresses of all Settlement Class members who were not employed as of the last day of the

Settlement Period. Farmland will further provide to the Settlement Administrator the identity

and last known addresses of each Settlement Class member, employed as of the last date of the

Class period, to whom Farmland was unable to distribute the class notice within 35 days after the

preliminary approval of the Settlement.

The Settlement Administrator shall update through the Lexis Nexis Credit Bureau Scrub

the addresses of each Settlement Class member who was either not employed as of the last date

of the Class Period or to whom Farmland was unable to distribute class notice. The Settlement Administrator shall, within 45 days of preliminary approval of the Settlement, mail the class notice to the updated addresses of all Settlement Class members not employed at the end of the Class Period, or to whom Farmland was unable to distribute the notice. If the United States Postal Service returns any mail with a forwarding address, the Settlement Administrator will update that Settlement Class member's address and use the forwarding addresses to provide notice and all future communication with the Settlement Class member.

The notice form and process designed for providing notice to the Settlement Class members pursuant to Rule 23 are more than sufficient to comply with the due process requirements of providing notice to the Settlement Class. The employment records Farmland will use are fairly recent; the oldest of which would related to employment in October 2003. The Settlement Administrator will use the Lexis Nexis Credit Bureau Scrub to attempt notice delivery to all Settlement Class members not employed as of the last date of the Class Period, as well as to any member to whom Farmland is unable to complete delivery. Should the United States Postal Service return mail with a forwarding address, the Settlement Administrator will mail notice to the forwarding address within three (3) business days of return by the U.S. Postal Service and shall retain the forwarding address for future communications with the Settlement Class member.

The Class Notice form itself clearly describes the terms of the Settlement, how the member will be distributed their share from the common fund, and how the member may object to or exclude themselves from the Settlement Agreement. The Class Notice form further provides that Settlement Class members who do not timely exclude themselves from the Settlement Class shall be deemed to have assented to inclusion in the Settlement Class, releasing

Farmland from all liability under the terms of the Settlement Agreement. Additionally, the form states that Settlement Class members will be deemed to have released Farmland as under the terms of the Settlement Agreement even if their Class Notice form and/or check is returned as Undeliverable Mail.

### 3.    All the Attendant Risks of Litigation

Essentially, this factor is an amalgam of the analysis described above. When the risks of liability and damages are considered in the light of the immediate, concrete and substantial benefits offered to the Settlement Class, this settlement is an excellent result for the Settlement Class. This is particularly true for the Plaintiffs and class members who are blue-collar workers in a largely migratory industry (with a significant immigrant workforce) that sees a substantial amount of worker turnover on a yearly basis. Even a lengthy but successful litigation would likely result in a significant percentage of the class receiving no compensation because they will have left employment at Farmland and moved away from the Monmouth, Illinois area.

### 4.    The Complexity, Expense, and Likely Duration of Further Litigation

An important factor in the proposed settlement was the likely duration of further litigation if this settlement were not consummated. Undoubtedly, the litigation would have been expensive and protracted. The parties would have had to engage in extensive further discovery relating to class certification issues, including depositions of both Representative Plaintiffs and representatives of Farmland, as well as third-parties. Class certification issues would have to briefed and argued, and the Court would be required to conduct a class certification hearing. Following the class certification determination, the parties would need to complete all discovery related to the merits, dispositive motions would have to be briefed, argued and decided, and the case would have to be tried. Post-trial motions and appeals would likely follow, making a final

determination in this case possibly years away.

Clearly, litigating the issues presented in this case would have consumed substantial resources of both the parties and the Court, which resources Defendant is able to put toward the settlement for the benefit of the Settlement Class as a result of the efforts of counsel to reach an early resolution of the claims.

### 5. The Stage of the Proceedings and the Amount of Discovery Completed

The parties have engaged in extensive informal discovery, wherein Farmland responded to Plaintiffs' requests for information and produced detailed time studies relating to the Farmland plant evaluating the time employees spend engaged in donning, doffing, and related activities for which Plaintiffs allege that they were entitled to additional compensation. Plaintiffs' counsel also toured and inspected the Farmland plant on December 7, 2006 in order to witness the proposed Settlement Class engaging in donning, doffing, and related activities while the plant was in full operation, informally assess the time spent by employees who performed these activities (and compare that time to the time studies produced by Farmland) and otherwise assess the strengths and weaknesses of Plaintiffs' claims.

Plaintiffs' counsel has had the benefit of information gained in related litigation in Pennsylvania state court involving another Smithfield-owned subsidiary company called Moyer Packing Company in Souderton, Pennsylvania. The Pennsylvania action had proceeded through formal discovery and motions to dismiss and was more advanced than the litigation here. Nonetheless, Plaintiffs' counsel was able to verify that much of what they learned from the more-advanced Pennsylvania litigation was factually similar to the Monmouth, Illinois plant involved in the case at bar.

By the time the settlement agreement was reached and the Agreement of Settlement was

executed, Plaintiffs' counsel was fully aware of the strengths and weaknesses of their case.

Plaintiffs believe they have meritorious claims, but also understood that there was a risk of not

prevailing at the class certification hearing or on the merits at trial. The settlement in this case

was reached only after counsel for Plaintiffs had reviewed the applicable law and obtained

sufficient information through informal discovery (as well as formal discovery in the

Pennsylvania action) and discussions to have a clear view of the strengths and weaknesses of the

case and to evaluate the adequacy of the settlement.  In re Warner Commc'ns Sec. Litig., 618 F.

Supp. 735, 741 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986); see also Girsh v. Jepson, 521

F.2d 153, 157 (3d Cir. 1975).

**6.    The Recommendations of Competent Counsel**

The negotiations leading to the proposed settlement were conducted at arm's length by

competent counsel with diverse experience in complex class action and commercial litigation.

Those counsel, each of whom undertook to familiarize himself or herself fully with the facts and

applicable law surrounding the litigation and to evaluate the proposed settlement, all recommend

the settlement to the Court as a fair, reasonable, and adequate resolution of the litigation.

The proposed settlement is the product of lengthy, well-informed and non-collusive

negotiations.  This settlement is the result of intensive arms-length negotiations between the

parties over the course of several months and numerous telephone conferences.  Farmland has

continued to deny any wrongdoing or legal liability arising out of the conduct alleged in this

action.  Nonetheless, Farmland has concluded that it is desirable that this action be settled in the

manner and upon the terms and conditions set forth in the Settlement Agreement in order to

avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties

of trial and appeals.

The Representative Plaintiffs and their counsel recognize the expense and length of a trial in this action against Farmland through possible appeals, which could take several years.  They have also taken into account the uncertain outcome and risk of litigation, plus the inherent problems of, proof under, and alleged defenses to, the claims asserted in the action. Representative Plaintiffs and their counsel believe that the settlement set forth in the Settlement Agreement confers substantial immediate benefits upon the Settlement Class.  In negotiating the settlement, counsel had the benefit of informal discovery in this action in order to weigh the risk of litigation against the benefits and certainty that the settlement provides.  Plaintiffs' counsel only entertained settlement possibilities after they possessed sufficient information regarding the size of the Settlement Class to make an informed judgment regarding the results that could be obtained through further litigation.  Based upon their evaluation, Representative Plaintiffs and their counsel have determined that the settlement is in the best interest of the Settlement Class. There is no need for continued litigation simply to reaffirm what is already known by the negotiators.

The proposed settlement has no "obvious deficiencies" and falls well within the range for approval.  The entire Settlement Class will receive the same opportunity to participate in and make a claim for cash payment from the Settlement Fund.  Clearly, the goal of this litigation, to seek monetary redress for the Settlement Class, has been met.  The settlement does not improperly grant preferential treatment to Representative Plaintiffs or segments of the Settlement Class.  The relief provided in the settlement will benefit all similarly situated Settlement Class members in a manner commensurate with their length of employment and the equipment they wore.

Any Settlement Class member who wishes to participate in the distribution of the

Settlement Fund must simply have an ascertainable address, and not exclude themselves from the

Settlement Class.  Farmland's records will be relied upon to calculate distributions in the first

instance, and Settlement Class members will not be required to submit any documentation to

support their entitlement to distribution.  The administration process is designed to minimize any

burden on the Settlement Class, and to minimize administrative costs in order to facilitate

expeditious payment of Settlement Class members' claims.

At the Final Approval Hearing, Representative Plaintiffs and Farmland will present a

final judgment giving effect to the Settlement Agreement and dismissing without prejudice all

claims of any purported Settlement Class members who have been excluded by the Settlement

Class as set forth above.  Upon confirmation of the settlement at the Final Approval Hearing, and

performance by Farmland of all of its obligations under the Settlement Agreement, Farmland

will be fully, finally, and completely released of all liability to the Settlement Class members not

requesting exclusion, except for those liabilities created by the Settlement Agreement.

WHEREFORE, the parties jointly and respectfully request that the Court preliminarily

approve the settlement and enter the proposed Preliminary Approval Order.

Dated:  May 3, 2007

Respectfully submitted,

_s/ Brian P. McCafferty___
Brian P. Kenney, Esq.
Brian P. McCafferty, Esq.
Eric L. Young, Esq.
Philip A. Downey, Esq.
Kenney Lennon & Egan
3031C Walton Road, Suite 202
Plymouth Meeting, PA  19462
610.940.9099
610.940.0284 (fax)

Plaintiffs' Class Counsel

_s/Blair B. Hanzlik_____
Blair B. Hanzlik, Esq.
McGuireWoods LLP
77 W. Wacker Dr., Suite 4100
Chicago, IL  60601
312.849.8100
312.849.3690 (fax)

Of Counsel:
Alan K. Cotler, Esquire
Shannon E. McClure, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100
(215) 851-1420 (fax)

Counsel for Farmland Foods, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I, Blair B. Hanzlik, an attorney, hereby certify that on May 3, 2007, I caused a copy of the foregoing Joint Motion for Certification of a Settlement Class and Preliminary Approval of Settlement and Class Notice and Memorandum in Support thereof, to be filed electronically with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court System.  I also hereby certify that I have provided notice of this filing by placing a copy in the United States Mail, proper postage prepaid, before 5:00 p.m. on May 3, 2007.

Jarius M. Gilden
2711 Eastwood Avenue
Evanston, IL  60201

Brian P. Kenney, Esquire
Brian P. McCafferty, Esquire
Eric L. Young, Esquire
Philip A. Downey, Esquire
Kenney Lennon & Egan
3031C Walton Road, Suite 202
Plymouth Meeting, PA  19462


<u>s/ Blair B. Hanzlik</u>
Blair B. Hanzlik (ARDC # 6279664)
McGuireWoods LLP
77 W. Wacker Dr., Suite 4100
Chicago, IL  60601
Tel:  (312) 849-8100
Fax:  (312) 849-3690

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| GREGORY CHURCHILL, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Docket No. 4:06-cv-4023 |
| v. | ) Hon. Michael M. Mihm |
| | ) |
| FARMLAND FOODS, INC. | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |
| | ) |

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| GREGORY CHURCHILL, ROBERT DELOACH, JONATHAN RICHARD, SANDRA CREWS, JASON SMITH, KIM LINNEMAN, CONNIE HEDGES, ELIZABETH BAVERY, CHARLES ROWSEY, KATIE BABCOCK, ANDREW WREN, CHARLES FURMAN, YVONNE HAMMOND, TRACY CASSIDAY, CHRISTOPHER CASSIDAY, KELLY MIZE, KATHY HILLIER, CONCHETTA BUTLER, DANIELLE FLORENCE, STACEY BURGESS, MICHELLE DARMER, KEVIN WINKING, MELISSA MILLER, LUANA JOHNSON, and ROBERT MCINTYRE, on behalf of themselves and all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>        v.<br><br>FARMLAND FOODS, INC.<br><br>        Defendant. | )<br>)<br>)<br>) Docket No. 4:06-cv-4023<br>) Hon. Michael M. Mihm<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SETTLEMENT AGREEMENT

Brian P. McCafferty, Esq.
Kenney Lennon & Egan
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
610.940.9099
610.940.0284 (fax)

Michael Hamilton, Esq.
Provost Umphrey Law Firm, LLP
2002 Richard Jones Rd.
Suite C-103
Nashville, Tennessee 37215
615.242.0199

Blair B. Hanzlik, Esq.
McGuireWoods LLP
77 W. Wacker Dr., Suite 4100
Chicago, IL 60601
312.849.8100
312.849.3690 (fax)

Of Counsel:
Alan K. Cotler, Esq.
Shannon Elise McClure, Esq.
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
215.851.8100
215.851.1420 (fax)

Jairus M. Gilden, Esq.                          Attorneys for Defendant Farmland Foods,
2711 Eastwood Ave.                              Inc.
Evanston, IL 60201
847.328.8542

Attorneys for Plaintiffs

  **IT IS HEREBY AGREED**, by, between and among Gregory Churchill, Robert

Deloach, Jonathan Richard, Sandra Crews, Jason Smith, Kim Linneman, Connie Hedges,

Elizabeth Bavery, Charles Rowsey, Katie Babcock, Andrew Wren, Charles Furman, Yvonne

Hammond, Tracy Cassiday, Christopher Cassiday, Kelly Mize, Kathy Hillier, Conchetta Butler,

Danielle Florence, Stacey Burgess, Michelle Darmer, Kevin Winking, Melissa Miller, Luana

Johnson, and Robert McIntyre, on behalf of themselves and all other similarly situated

individuals ("Plaintiffs"), and Farmland Foods, Inc. (together with all parents, affiliates,

divisions, subsidiaries, successors, and predecessors thereof, as more fully defined herein,

"Farmland," "Monmouth" or "Defendant"), through their duly authorized counsel, that the

putative class action lawsuit filed in the Central District of Illinois (the "Court"), and captioned

<u>Gregory Churchill et al. v. Farmland Foods, Inc.</u>, No. 4:06-CV-4023 ("Lawsuit") and the matters

raised in the Lawsuit, shall be settled, compromised, and dismissed on the merits and with

prejudice, on the terms and conditions set forth in this Settlement Agreement (the "Settlement"

or "Settlement Agreement"), including the release set forth herein, subject to the approval of the

Court.

  **WHEREAS**, Gregory Churchill, Robert Deloach, Jonathan Richard, Sandra Crews,

Jason Smith, Kim Linneman, Connie Hedges, Elizabeth Bavery, Charles Rowsey, Katie

Babcock, Andrew Wren, Charles Furman, Yvonne Hammond, Tracy Cassiday, Christopher

Cassiday, Kelly Mize, Kathy Hillier, Conchetta Butler, Danielle Florence, Stacey Burgess,

- 2 -

Michelle Darmer, Kevin Winking, Melissa Miller, Luana Johnson, and Robert McIntyre, filed a

Class Action Complaint with the Court on April 18, 2006;

**WHEREAS**, the Complaint asserts claims alleging that the Defendant failed to fully

compensate workers in its Monmouth, Illinois plant for all time spent donning, doffing, cleaning,

maintaining, and waiting to receive work-related gear, clothing, and equipment, and for all time

spent traveling between changing areas and work stations ("donning, doffing and related

activities");

**WHEREAS**, Monmouth reengineered its production floor on or about July 31, 2006

("Plant Reengineering") to reduce the time that employees spent engaging in donning, doffing

and related activities;

**WHEREAS**, Plaintiffs filed their First Amended Class Action Complaint on June 16,

2006;

**WHEREAS**, Defendant filed an Answer to the First Amended Class Action and

Representative Action Complaint on September 11, 2006;

**WHEREAS**, Plaintiffs' First Amended Class Action Complaint alleges claims under the

Fair Labor Standards Act ("FSLA"), the Illinois Minimum Wage Law ("MWL"), and the Illinois

Wage Payment and Collection Act ("WPCA");

**WHEREAS**, Plaintiffs' FLSA claim is subject to a maximum statute of limitations

period of three years, the MWL claim is subject to a maximum statute of limitations period of

three years, and the WPCA claim is subject to a maximum statute of limitations period of five

years;

**WHEREAS**, Farmland Foods, Inc., the company which owned the Monmouth plant,

filed for bankruptcy under Chapter 11 on or about May 31, 2002;

- 3 -

**WHEREAS**, Smithfield Foods, Inc. purchased the assets of Farmland Foods, Inc. on October 29, 2003 and Farmland Foods, Inc. is now a wholly-owned separately-incorporated subsidiary of Smithfield Foods, Inc.;

**WHEREAS**, despite the applicable time frame of the relevant statutes of limitations, none of the claims in the Lawsuit against Farmland Foods, Inc. could be actionable prior to the asset purchase on October 29, 2003;

**WHEREAS**, in connection with settlement negotiations, Defendant informally responded to Plaintiffs' Interrogatory requests, and Defendant produced detailed time studies relating to the Farmland plant evaluating the time employees spend engaged in donning, doffing and related activities for which Plaintiffs allege that they are entitled to additional compensation;

**WHEREAS**, in connection with settlement negotiations, Plaintiffs' counsel visited the Monmouth plant on Thursday, December 7, 2006, in order to witness the proposed class members engaging in donning, doffing and related activities while the Monmouth plant was in full operation;

**WHEREAS**, Plaintiffs and Plaintiffs' Counsel have carefully analyzed the merits of Plaintiffs' claims and the merits of the defenses raised by Defendant;

**WHEREAS**, Plaintiffs and Defendant agree that the current compensation practices at Monmouth, initiated at the time of the Plant Reengineering, are in compliance with all local, state and federal laws, and the amount of compensation currently paid to employees to compensate them for time spent engaged in donning, doffing, and related activities is adequate and fully compensates employees;

**WHEREAS**, Plaintiffs believe that the past compensation practices at Monmouth failed to adequately compensate employees for donning, doffing and related activities;

- 4 -

**WHEREAS**, based upon their discovery, investigation and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Plaintiffs' Counsel on behalf of the Class and the Named Plaintiffs, as defined herein, have agreed to settle the Lawsuit pursuant to the provisions of this Agreement after considering, among other things, (i) the substantial benefits to Plaintiffs and the Class under the terms of this Settlement Agreement, (ii) the attendant risks and uncertainty of litigation, especially in complex actions such as this Lawsuit, as well as the difficulties and delays inherent in such litigation, (iii) the possibility and likelihood of appeals even if Plaintiffs prevail on a class-wide basis, and (iv) the desirability of consummating this Settlement Agreement promptly, in order to provide effective relief to Plaintiffs and the Class.

**WHEREAS**, Plaintiffs and Plaintiffs' Counsel agree that this Settlement Agreement is fair, reasonable and adequate because it provides substantial and immediate monetary relief for alleged past violations, is in the best interests of the Class, and resolves fairly the claims alleged in the Lawsuit, and avoids the considerable risks and delays of further litigation;

**WHEREAS**, Monmouth expressly denies any wrongdoing alleged in the pleadings filed in the Action and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it in the Lawsuit, and disagrees that it is liable for any additional compensation to employees for donning, doffing and related activities, either currently or in the past;

**WHEREAS**, while Monmouth expressly disagrees that any additional compensation is owed to employees for donning, doffing and related activities, Monmouth believes that those employees who donned mesh gloves, mesh sleeves, plastic arm guards, mesh aprons, knife belts, polar gloves, and/or belly guards ("Personal Protective Equipment") prior to the Plant

Reengineering could have an argument that, based on recent caselaw, they are owed additional compensation for donning, doffing and related activities;

**WHEREAS**, while Monmouth expressly disagrees that any additional compensation is owed to employees who work in positions where they don any other clothing, gear or equipment supplied by Farmland, such as helmets, boots, smocks, hairnets and earplugs ("Other Equipment"), and expressly disagrees that any additional compensation is owed to employees who work in positions where they don Personal Protective Equipment after the Plant Reengineering date, Monmouth nevertheless considers it desirable to provide these employees with compensation in the interests of eliminating all potential claims and achieving final resolution of all potential issues in this Lawsuit;

**WHEREAS**, Monmouth considers it desirable for the Lawsuit to be settled and dismissed, including claims by all employees who wear Personal Protective Equipment and claims by all employees who wear Other Equipment, because this Settlement will (i) ensure that employee morale is not disrupted, (ii) avoid disruption of the management and operation of Monmouth's business due to the pendency and defense of the Lawsuit, (iii) put Plaintiffs' claims and the underlying matters to rest, (iv) provide the parties with a final resolution to the dispute, and (v) avoid substantial expense, burdens and uncertainties associated with continued litigation of the claims;

**WHEREAS**, after extensive arms-length negotiations, conducted over 4 sessions and 5 days, on August 3, 2006, October 19, 2006, January 4-5, 2007, and January 12, 2007, Plaintiffs and Defendant wish to a settle this Lawsuit subject to approval of the Court and cause the dismissal with prejudice of the Lawsuit subject to the approval of the Court;

**WHEREAS,** Plaintiffs seek to represent the Settlement Class, as defined herein, and Defendant agrees that a Settlement Class should be certified solely for the purpose of effectuating a settlement.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by the parties that the Action shall be settled, subject to the Court's approval, on the following terms and conditions (the "Settlement Agreement"):

1.     For settlement purposes only, the parties hereto agree that the following settlement class (the "Settlement Class") should be certified:

> All persons who have been employed as hourly production employees at Farmland Foods, Inc.'s Monmouth plant during any time from October 29, 2003, through February 8, 2007, and all hourly employees who are employed in the plant as of February 8, 2007 and working in jobs which are closely associated with the production process.

The Class period runs through February 8, 2007 ("Class Period Close Date"). All persons within the Settlement Class are referred to herein as the "Settlement Class Members." Settlement Class Members who are hourly production employees and employed by Farmland on the Class Period Close Date are referred to herein as "Employed-Production Settlement Class Members." Settlement Class Members employed with Farmland as of February 8, 2007 who work in jobs which are closely associated with the production process are referred to herein as "Employed-Associated Settlement Class Members." Employed-Production Settlement Class Members and Employed-Associated Settlement Class Members are referred to collectively herein as "Employed Settlement Class Members," unless specifically identified. Settlement Class Members not employed by Farmland on the Class Period Close Date are referred to herein as "Formerly-Employed Production Settlement Class Members." Former employees whose employment was terminated prior to February 8, 2007 and who did not work as hourly production employees, but worked in jobs which were closely associated with the production

- 7 -

process, are not considered "Formerly-Employed Production Settlement Class Members" and are not a part of the Settlement Class.

2.    If the Settlement is not approved, Farmland's stipulation to certification of the above Settlement Class shall be null and void *ab initio* and may not be used or relied upon by Plaintiffs, Class Counsel or any Settlement Class Member for any purpose whatsoever in the Lawsuit or otherwise.  "Class Counsel" as used herein shall mean Brian McCafferty his law firm, Kenney, Lennon & Egan; Michael Hamilton and his law firm Provost Umphrey Law Firm LLP; and Jairus M. Gilden.  Farmland's Counsel as used herein shall mean Blair Hanzlik and his law firm McGuire Woods LLP, and Alan Cotler and Shannon Elise McClure and their law firm Reed Smith LLP.

3.    After execution of this Settlement Agreement, counsel for Plaintiffs and Defendant shall file a Joint Motion for Preliminary Approval of the Class Action Settlement, Approval of Class Notice, Certification of a Settlement Class, and Appointment of Class Counsel, asking the Court to enter an order (the "Preliminary Approval Order") in the form attached as Exhibit A, preliminarily approving this Settlement Agreement, certifying a settlement class, appointing Class Counsel, and approving and authorizing the distribution of the Class Notice and Calculation of Days Worked ("Class Notice"), in the form attached as Exhibit B, to all Settlement Class Members.  The Class Notice will be provided to all Settlement Class Members in both English and Spanish.  Thereafter, pursuant to the schedule established in the Preliminary Approval Order, counsel for Plaintiffs and Defendant shall file a joint motion requesting the Court to grant final approval of the Settlement and requesting entry of an order (the "Final Approval Order") in the form attached as Exhibit C finally approving the Settlement.

4.      As partial consideration for this Settlement, Farmland will pay the sum of

$977,000 (hereinafter the "Settlement Fund").  Class Counsel shall apply to the Court for an

award of attorneys' fees and costs to be paid from the Settlement Fund in the amount of 33% of

the Settlement Fund ("Attorneys' Fees and Costs Award"), an amount which includes

reimbursement of reasonable out-of-pocket litigation expenses and costs.  See Paragraph 16,

infra.  The portions of the Settlement Fund to be used to distribute monies to Formerly-

Employed Production Settlement Class Members and to fund the Attorneys' Fees and Costs

Award shall be deposited with the Settlement Administrator by Farmland within fifteen (15)

days of the Court signing the Preliminary Approval Order.  Farmland, or its affiliates, shall

reserve in its operating accounts the portion of the Settlement Fund which will compensate

Employed Settlement Class Members.  Farmland shall keep a separate and detailed log of all

deposits, payments and reimbursements associated with this portion of the settlement for

Employed Settlement Class Members.  The Settlement Fund shall be used to pay all Settlement

Class Members who are entitled to participate in the distribution of settlement proceeds pursuant

to this Settlement Agreement and the accompanying Exhibits.  The Attorneys' Fees and Costs

Award, in the amount of 33% of the Settlement Fund, shall compensate Class Counsel for all

Court-approved attorneys' fees, and shall compensate the named Plaintiffs for their services as

Class representatives.  The Attorneys' Fees and Costs Award shall also be utilized to pay for

one-half (1/2) of all "Settlement Costs," which are reasonable costs associated with the printing

and mailing of the Class Notice attached as Exhibit B and mailing of the checks to Formerly-

Employed Production Settlement Class Members who participate in the Settlement in the manner

specified in paragraph 7, and those Employed Settlement Class Members identified by Farmland

as no longer employed as of the date of check distribution to Employed Settlement Class

- 9 -

Members, and tracking opt-outs and objectors. Farmland will pay the remaining one-half (1/2) of the Settlement Costs. Farmland's one-half (1/2) share of the Settlement Costs is an additional amount above and beyond the amount of the Settlement Fund and shall be paid from Farmland's operating expenses. Class Counsel's one-half share and Farmland's one-half share of the Settlement Costs may be reimbursed as provided in paragraph 5, infra. Farmland's overhead costs and the costs associated with time spent by its employees in assisting with settlement administration shall not be reimbursed from the Settlement Fund.

5.    All $977,000 in the Settlement Fund shall be expended in connection with the Settlement, and no money shall revert to Farmland. If any money is not disbursed, because, for example, some Claimants (defined in paragraph 7, infra) do not cash their settlement checks within 60 days of the checks' issuance (including checks that remain uncashed because they are returned as undeliverable), the Settlement Administrator shall reimburse Farmland and Class Counsel in equal amounts for the Settlement Costs. Any additional amounts remaining in the Settlement Fund after full reimbursement of Farmland and Class Counsel for Settlement Costs will be distributed in equal amounts to all Employed Settlement Class Members who are still employed by Farmland on the date 10 days after Farmland and Class Counsel are reimbursed for Settlement Costs ("Second Distribution to Employed Settlement Class Members"). Any additional amounts remaining in the Settlement Fund after the Second Distribution to Employed Settlement Class Members will be donated cy pres to the American Cancer Society Relay For Life of Warren County. Any and all funds in the Settlement Fund remain the property of the Settlement Fund even if checks are not cashed; at no time shall any of the amounts in the Settlement Fund be treated as unclaimed property.

- 10 -

6.      The parties have appointed BrownGreer PLC ("Settlement Administrator") to administer this Settlement. The selection of BrownGreer PLC's engagement shall be agreed upon by each party, and agreement shall not be unreasonably withheld.

7.      After reducing the Settlement Fund by the reasonable amounts necessary to cover the Attorneys' Fees and Costs Award and Farmland's share as employer of any applicable employment taxes, the balance of the Settlement Fund the ("Net Settlement Fund") shall be distributed to any Settlement Class Members who (i) do not exclude themselves from the Settlement <u>and</u> (ii) either are Employed Settlement Class Members, <u>or</u> are Formerly-Employed Production Settlement Class Members whose Class Notice is not returned by the United States Postal Service as Undeliverable Mail. All persons entitled to distribution from the Settlement Fund pursuant to this paragraph shall be deemed "Claimants." "Undeliverable Mail" is mail which is sent to updated addresses as obtained by the Settlement Administrator, and is returned by the United States Postal Service as undeliverable, without any forwarding address information. Such distributions to Claimants shall be in an amount calculated pursuant to the steps set forth in the following subparagraphs 7(a) and 7(b).

a.      <u>Step #1 of the Calculation:</u>

(i.)     Each Employed-Production Settlement Class Member and Formerly-Employed Production Settlement Class Member shall receive credit in the approximate amount of $0.60568 for each day worked from October 29, 2003 through July 31, 2006;

(ii.)    Each Employed-Production Settlement Class Member and Formerly-Employed Production Settlement Class Member shall

- 11 -

receive credit in the approximate amount of $0.03697 for every

other day worked from August 1, 2006 through February 8, 2007;

(iii.)    in recognition of the active tenure and continued performance of

Farmland's current employees, each Employed-Production

Settlement Class Member will receive a credit of $20.00 in

addition to the amounts owed pursuant to paragraphs 7(a)(i) and

7(a)(ii), supra; and,

(iv.)    in recognition of the active tenure and continued performance of

Farmland's current employees, each Employed-Associated

Settlement Class Member will receive a credit of $20.00 but will

not receive any credit pursuant to subparagraphs 7(a)(i), 7(a)(ii),

and 7(a)(iii), supra.

Final adjustments to the amounts specified in Step #1 will be made as necessary

to address the distribution of funds which had been set aside for Settlement Class Members

whose Class Notice is returned as Undeliverable Mail or who opt out of the Settlement.

b.    Step #2 of the Calculation: The amount to which each Settlement Class

Member is entitled shall be determined by multiplying the Net Settlement Fund by a ratio, the

numerator of which shall be the amount credited to that Settlement Class Member pursuant to

Step #1 above and the denominator of which shall be the total amount credited to all Settlement

Class Members pursuant to Step #1 above.  By way of example only, if pursuant to Step #1

above Settlement Class Member "A" were credited with the approximate amount of $600, and if

the total amount credited to all Settlement Class Members pursuant to those steps were

$1,000,000, and if the Net Settlement Fund were $890,000, then Settlement Class Member "A" would be entitled to approximately $534 ($890,000 x ($600 ÷ $1,000,000) = $534). By way of further example only, if pursuant to Step #1 above Settlement Class Member "A" were credited with the approximate amount of $600, and if the total amount credited to all Settlement Class Members pursuant to those steps were $800,000, and if the Net Settlement Fund were $890,000, then Settlement Class Member "A" would be entitled to approximately $667.50 ($890,000 x ($600 ÷ $800,000) = $667.50).

       c.     In determining a Settlement Class Member's entitlement to distribution, the Settlement Administrator will initially rely on Farmland's records relating to the participating Settlement Class Member's employment and Farmland's calculations regarding what each Settlement Class Member is due. Farmland shall provide the Settlement Administrator and Class Counsel: (i) the name, social security number, employee number, and last known address of all Settlement Class Members; (ii) the hiring and termination dates for each Settlement Class Member; (iii) the number of days each Settlement Class Member worked during the periods described in subparagraphs 7.a., above; and (iv) the total amount due to each Settlement Class Member.

       (i.)    If a Settlement Class Member wishes to challenge the hiring and/or termination dates, as stated in the Class Notice, the Settlement Class Member must send a letter to the Settlement Administrator, together with documentary evidence of an actual hiring or termination date, received by the Settlement Administrator no later than twenty (20) days after mailing of the Class Notice to Formerly-Employed Production Settlement Class Members, or for Employed Settlement Class Members no later than twenty (20) days after distribution of the Class Notice. With respect to the date of receipt for purposes of this subparagraph, the

Settlement Administrator's records shall be deemed dispositive. If a Settlement Class Member does not challenge the hiring and/or termination dates stated in the Class Notice, it will be presumed that Farmland's dates are correct.

(ii.) The Settlement Administrator shall resolve, in a manner agreed to by the parties, all challenges made by Settlement Class Members to the stated hiring and/or termination dates. The Settlement Administrator may, in its discretion, seek input from the parties to resolve these challenges.

d. The Settlement Administrator shall handle mailing of Class Notice and mailing of checks to Formerly-Employed Production Settlement Class Members and those Employed Settlement Class Members identified by Farmland as no longer employed as of the date of check distribution to Employed Settlement Class Members. Farmland will distribute Class Notices and checks to the remaining Employed Settlement Class Members along with distribution of regular Farmland paychecks. The Settlement Administrator will track opt-out and objectors for all Settlement Class Members.

e. In order to receive a distribution from the Net Settlement Fund, Employed Settlement Class Members who are employed by Farmland on the date when distributions are made to Employed Settlement Class Members will receive an additional check with their paychecks, assuming they have not excluded themselves from the settlement. Such checks will be in the amount to which each is entitled, less payroll taxes ordinarily borne by workers. Within ten (10) days of distributing checks to Employed Settlement Class Members, Farmland will advise the Settlement Administrator if any Employed Settlement Class Member's check

- 14 -

could not be distributed by Farmland, and such Employed Settlement Class Members' checks

will be distributed by the Settlement Administrator.

    f.  The Settlement Administrator shall update the addresses of all Formerly-

Employed Production Settlement Class Members and those Employed Settlement Class

Members identified by Farmland as no longer employed as of the date of check distribution to

Employed Settlement Class Members through the Lexis Nexis Credit Bureau Scrub. In order to

receive a distribution from the Net Settlement Fund, Formerly-Employed Production Settlement

Class Members and those Employed Settlement Class Members identified by Farmland as no

longer employed as of the date of check distribution to Employed Settlement Class Members

must have successfully received the Class Notice, as evidenced by the Class Notice not being

returned by the United States Postal Service as Undeliverable Mail, and must not have excluded

themselves from the Settlement. If the United States Postal Service returns any mail with a

forwarding address, the Settlement Administrator will mail the Class Notice to the forwarding

address within three (3) business days of return by the United States Postal Service and shall use

any such forwarding address for future communications with Settlement Class Members. Any

Formerly-Employed Production Settlement Class Member and those Employed Settlement Class

Members identified by Farmland as no longer employed as of the date of check distribution to

Employed Settlement Class Members whose Class Notice is not returned as Undeliverable Mail

shall be considered a Claimant and shall receive a distribution by means of the Settlement

Administrator distributing a check via the United States Postal Service to the same address to

which the Class Notice was successfully sent. Checks shall be mailed by the Settlement

Administrator to the address to which the Class Notice was successfully sent. Such checks will

be in the amount to which each is entitled, less payroll taxes ordinarily born by workers.

g.    Each check mailed or delivered to Claimants shall bear the following statement: "By endorsing this instrument, Plaintiff hereby consents to the settlement agreement and forever discharges Farmland from all claims brought or which could have been brought by Gregory Churchill, Robert Deloach, Jonathan Richard, Sandra Crews, Jason Smith, Kim Linneman, Connie Hedges, Elizabeth Bavery, Charles Rowsey, Katie Babcock, Andrew Wren, Charles Furman, Yvonne Hammond, Tracy Cassiday, Christopher Cassiday, Kelly Mize, Kathy Hillier, Conchetta Butler, Danielle Florence, Stacey Burgess, Michelle Darmer, Kevin Winking, Melissa Miller, Luana Johnson, and Robert McIntyre, on behalf of themselves and all other similarly situated individuals v. Farmland Foods, Inc., a Delaware Corporation, a wholly owned subsidiary of Smithfield Foods, Inc. from October 29, 2003 to February 8, 2007, including but not limited to claims filed under state or federal statutory or common law for unpaid wages, including but not limited to the Fair Labor Standards Act, 29 U.S.C. § 216(b)." The endorsement will be printed or stamped on the back of the check in both English and Spanish.

h.    If any checks remain uncashed more than sixty (60) days after mailing, including any checks returned as undeliverable, then such checks shall become void and the remaining funds shall be distributed pursuant to paragraph 5, supra.

8.    As compensation for the time and cooperation of Gregory Churchill, Robert Deloach, Jonathan Richard, Sandra Crews, Jason Smith, Kim Linneman, Connie Hedges, Elizabeth Bavery, Charles Rowsey, Katie Babcock, Andrew Wren, Charles Furman, Yvonne Hammond, Tracy Cassiday, Christopher Cassiday, Kelly Mize, Kathy Hillier, Conchetta Butler, Danielle Florence, Stacey Burgess, Michelle Darmer, Kevin Winking, Melissa Miller, Luana Johnson, and Robert McIntyre ("Named Plaintiffs") in assisting Plaintiffs' counsel with their representation of the Class, each Named Plaintiff will receive $350 from the 1/3 portion of the

Settlement Fund that is being reserved for payment of the Attorneys' Fees and Costs Award.  See Paragraph 16, infra.

9.      In order to exclude themselves from the Settlement, Settlement Class Members must mail to the Settlement Administrator a letter received by the Settlement Administrator no later than seventy-five (75) days after the Preliminary Approval Date, stating that he/she wishes to be excluded from the Settlement, and containing his/her name, address and social security number.  In order to be effective, this letter must actually be received by the Settlement Administrator no later than seventy-five (75) days after the Preliminary Approval Date. With respect to the date of receipt for purposes of this subparagraph, the Settlement Administrator's records shall be deemed dispositive.

10.     Settlement Class Members may also appear at the Final Approval hearing to object to the Settlement.  A Settlement Class Member may only appear at the Final Approval hearing to object to the Settlement if the Settlement Class Member submits a letter to the Settlement Administrator stating the Settlement Class Member's intention to object and containing his/her name, address and social security number.  In order to be effective, this letter must be received by the Settlement Administrator no later than seventy-five (75) days after the Preliminary Approval Date.  With respect to the date of receipt for purposes of this subparagraph, the Settlement Administrator's records shall be deemed dispositive.

11.     Each Claimant shall indemnify Farmland, Plaintiffs, Class Counsel and the Settlement Administrator for any tax liability, including penalties and interest, arising out of any determinations that Farmland, Plaintiffs, Class Counsel, or the Settlement Administrator failed to properly withhold tax amounts from any payment received by that Claimant.

- 17 -

12.    Farmland, Plaintiffs, Class Counsel and the Settlement Administrator shall not be liable for any checks misdelivered or not delivered by the United States Post Office or Farmland. Farmland, Plaintiffs, Class Counsel and the Settlement Administrator shall not be liable for checks cashed by persons other than Settlement Class Members.  All Settlement Class Members shall be deemed to have released Farmland even if they do not receive a check or if their check is cashed by a person other than a Settlement Class Member.

13.    Farmland shall make payment to Employed Settlement Class Members, except those identified by Farmland to the Settlement Administrator pursuant to paragraphs 7(d) and 7(f), supra, by distribution with regular paychecks, to the extent reasonably feasible.  The Settlement Administrator will mail payments to Formerly-Employed Production Settlement Class Members and those Employed Settlement Class Members identified by Farmland as no longer employed as of the date of check distribution to Employed Settlement Class Members. The settlement payments by Farmland to Claimants who are currently Employed Settlement Class Members will be made within a reasonable time after the Effective Date, but no later than forty-five (45) days after the Effective Date, and will be in the approximate amount indicated for each Settlement Class Member on the Class Notice, as affected by the provisions of Paragraph 7(a).  Farmland shall provide written notification of the payments it has made and remit the remainder of the Net Settlement Fund to the Settlement Administrator within fifteen (15) days after Farmland makes settlement payments to Employed Settlement Class Members.  The Settlement Administrator shall then make payments to Claimants who are Formerly-Employed Production Settlement Class Members and those Employed Settlement Class Members identified by Farmland as no longer employed as of the date of check distribution to Employed Settlement Class Members within ten (10) days after receiving this notice from Farmland.

- 18 -

14.     All Class Notice forms will provide that Settlement Class Members who do not timely exclude themselves from the Settlement Class shall be deemed to have released Farmland as described in paragraph 20 below.  All Settlement Class Members will be deemed to have released Farmland even if their Class Notice form and/or check is returned undeliverable.

15.     Upon execution of this Settlement Agreement, the Plaintiff, Class Counsel, and Defendants will jointly file a Stipulation of Facts with the Court in the form attached hereto as Exhibit D.  The parties agree that the Stipulation of Facts shall only be applicable to the Farmland plant involved in this litigation, and no party shall seek to use any statements in the Stipulation of Facts as evidence or admissions against any plants involved in other litigations.  The Stipulation of Facts states that the Plaintiffs and Defendant agree that the current compensation practices at Farmland are in compliance with all local, state and federal laws, and the amount of compensation to employees for donning, doffing and related activities is adequate and fully compensates employees for all of these activities.  Plaintiff, Class Counsel, and Defendants are satisfied and have agreed that the evidence in this case supports the filing of the Stipulation of Facts.  Plaintiff, Class Counsel, and Defendants further agree that if the Settlement Agreement is not finally approved by the Court for whatever reason, then the Stipulation of Facts shall be null and void, and Class Counsel and Defendants will promptly submit a consent order stipulating that the Stipulation of Facts be vacated and withdrawn.

16.     Class Counsel shall apply to the Court for an award of attorneys' fees and costs to be paid from the Settlement Fund in the amount of 33% of the Settlement Fund, an amount which includes reimbursement of one-half (1/2) of the Settlement Costs and payments to the Named Class Members.  Farmland has agreed not to oppose Class Counsel's fee application in said amount.  The Settlement is not contingent upon Court approval of the amount sought in

- 19 -

Class Counsel's fee application. Any disputes between and among Class Counsel as to the allocation of the above-described attorneys' fees, expenses and costs shall be the sole responsibility of Class Counsel to resolve. In no event shall Farmland have any liability for the allocation of Court-approved attorneys' fees, expenses and costs. Settlement shall not be in any way delayed by the resolution or non-resolution of any disputes between and among Plaintiffs' Counsel (including Class Counsel) regarding the same. One-half (1/2) of the Attorneys' Fees and Costs Award approved by the Court shall be paid by the Settlement Administrator from the Settlement Fund within ten (10) days of the Effective Date to Kenney, Lennon & Egan for distribution among all Class Counsel, less one-half (1/2) of the Settlement Costs. The remainder of the Attorneys' Fees and Costs Award shall be paid by the Settlement Administrator from the Settlement Fund within seventy-five (75) days of the Effective Date to Kenney, Lennon & Egan for distribution among all Class Counsel.

17.    Within thirty (30) days after the Preliminary Approval Date, Farmland will: (i) attempt to distribute to all Employed Settlement Class Members who report to work during said period, a notice form substantially in the form attached as Exhibit B, subject to any changes made by the Court; and (ii) provide the Settlement Administrator with the last known addresses of all Formerly-Employed Production Settlement Class Members. The Settlement Administrator shall update the addresses of all Formerly-Employed Production Settlement Class Members through the Lexis Nexis Credit Bureau Scrub. Within thirty-five (35) days after the Preliminary Approval Date, Farmland shall notify the Settlement Administrator of the identity and last known address of Employed Settlement Class Members to whom it did not distribute said notice. Within forty-five (45) days after the Preliminary Approval Date, the Settlement Administrator shall mail to all Formerly-Employed Production Settlement Class Members, and those Employed

Settlement Class Members identified by Farmland, the Class Notice, substantially in the form

attached as Exhibit B and subject to any changes made by the Court.  Class Notice forms mailed

by the Settlement Administrator shall be mailed to Settlement Class Members at their last known

address as reflected in Farmland's company records, as updated by the Settlement

Administrator's use of the Lexis Nexis Credit Bureau Scrub.  If the United States Postal Service

returns any mail with a forwarding address, the Settlement Administrator will mail the Class

Notice to the forwarding address within three (3) business days of return by the United States

Postal Service and shall use any such forwarding address for future communications with

Settlement Class Members.

      18.    Not later than ninety (90) days after the Preliminary Approval Date (and not less

than ten (10) days prior to the final settlement approval hearing), the Settlement Administrator

shall prepare and serve upon Class Counsel and Farmland's Counsel: (a) a list of all persons who

objected to the settlement; (b) a list of all persons who have timely excluded themselves from the

Settlement Class, which Class Counsel shall promptly file with the Court; (c) copies of all of the

letters and envelopes the Settlement Administrator received from such persons excluding

themselves from the Settlement Class or objecting to the Settlement; and (d) Farmland's

calculation of the amount due each Claimant and of the individual and aggregate value of the

claims of Settlement Class Members who have excluded themselves from participation in the

Settlement pursuant to paragraph 9.  The Settlement Administrator may assume for purposes of

making the calculations described in this paragraph that the Court will approve Class Counsel's

petition for attorneys' fees and costs in the maximum amounts sought by Class Counsel, as

described in paragraph 16 herein.

- 21 -

19.    For purposes of this Agreement, "Judgment" means the order and judgment of the Court which, as set forth in Exhibit C, among other things, grants final approval of the settlement, approves distribution of the Settlement Fund, dismisses the Lawsuit with prejudice, and determines the amount of attorneys' fees and costs to be paid to Class Counsel.  As used herein, the term "Effective Date" means the date that the Judgment becomes final ("Final Judgment"), which shall be deemed to be the last to occur of the following: (a) if an appeal or review is not sought from the Judgment, the day after the expiration of the time for appeal of the Judgment; or (b) if an appeal is sought from the Judgment, the day after (i) the Judgment is affirmed without modification or the appeal is dismissed or denied, without alteration of the Judgment in any respect unsatisfactory to Farmland, and (ii) the Judgment is no longer subject to judicial review.

20.    For the consideration stated herein, the receipt, adequacy and sufficiency of which are hereby acknowledged, Plaintiffs agree that the Lawsuit shall be dismissed with prejudice, and Plaintiffs and all Settlement Class Members who do not timely exclude themselves from the Settlement Class, including any other person acting on their behalf or for their benefit, and including all Settlement Class Members whose mail is returned as Undeliverable Mail for any reason and for whom the United States Postal Service does not provide forwarding address information or whose address cannot be updated with the Lexis Nexis Credit Bureau Scrub (collectively "Releasors") hereby releases, covenants not to sue, remises and forever discharges Defendant, as well as its predecessors and successors in interest and present and former affiliates, parents, subsidiaries, insurers, officers, directors, agents, employees, members, shareholders, general partners, limited partners, beneficiaries, representatives, heirs, attorneys, and assigns (including, without limitation, any investors, trusts, or other similar entities) (collectively,

"Releasees") from any causes of action, claims, debts, contracts, agreements, obligations, liabilities, suits, claims, damages, losses, or demands whatsoever ("Claims"), in law or in equity, known or unknown at this time, suspected or unsuspected, which Plaintiff and the Class now have or ever had, or may in the future have, against the Releasees, under any legal theory, including, but not limited to, all claims under local, state or federal law, including claims for violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b), the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act or other acts, omissions or claims, and for any general, special, consequential and punitive damages specifically related to such claims, as well as any claims for disgorgement, restitution, injunctive relief, penalties, attorneys' fees and/or costs of suit in connection with such claims, whether or not alleged, arising out of the allegations in or subject matter of the Complaint from October 29, 2003 to the date of this Settlement Agreement.  This release is conditioned upon the final approval of this Settlement Agreement by the Court and upon Plaintiffs, Class Counsel, and Defendant meeting its obligations herein.

21.    Farmland shall have the right, but not the obligation, to be exercised in its sole discretion, to void this Agreement if Settlement Class Members exclude themselves in a number or an amount set forth in separate letter agreement the ("Letter Agreement") to be filed with the Court.  The parties intend to ask the Court to allow them to file this separate Letter Agreement under seal.

22.    Plaintiffs, Class Counsel, Farmland, and Farmland's Counsel agree not to encourage, assist, or solicit persons to exclude themselves from the Settlement Class or object to the Settlement.

23.     Unless otherwise agreed by all parties, this Settlement Agreement and the Settlement shall be null and void if a Final Judgment is not entered.  However, a reduction by the Court or by an appellate court of the attorneys' fees and expenses shall not render this Settlement Agreement null and void.

24.     It is expressly agreed and understood that this Settlement Agreement does not constitute an admission by any party and may not be offered, introduced, or admitted as evidence of liability or appended to any pleadings, motions, or briefs, except in an action brought to enforce the terms of this Settlement Agreement or as a defense to any cause of action, claim, or allegation, including but not limited to, a cause of action or claim barred or released by the terms hereof.

25.     This Settlement Agreement shall be binding upon and inure to the benefit of the Plaintiffs, the Settlement Class Members, the Released Parties, and their heirs, administrators, successors and assigns.

26.     In the event a Final Judgment is not entered, then: (a) this Settlement Agreement shall be of no force or effect; (b) this Settlement Agreement, including its exhibits, and any and all negotiations, documents and discussions associated with it, shall not be deemed or construed to be an admission of any kind or evidence: (i) of any violation of any statute, law or regulation, (ii) of any liability or wrongdoing by any of the Releasees, (iii) of the truth of any of the claims or allegations made in the Lawsuit; (iv) concerning liability on any of the Claims released in paragraph 20 of this Settlement Agreement or raised in the Lawsuit; (v) concerning the value of any claims by Plaintiffs or the Settlement Class Members; or (vi) concerning the propriety of certification of any Class.  Farmland expressly reserves all of its rights if the Settlement does not

become final in accordance with the terms of this Settlement Agreement, including the right to contest class certification in the Lawsuit. Any references in this Settlement Agreement to the alleged business practices of Farmland shall raise no inference respecting the propriety or impropriety of those business practices or any other business practices of Farmland.

27.    In the event that Final Judgment is not entered, Farmland shall not be obligated to make any payments, including any payments to participating Settlement Class Members or Class Counsel and shall retain the full amount of the Settlement Fund, except for amounts spent not to exceed one-half (1/2) of Settlement Costs, which shall not be recoverable by Farmland irrespective of whether Final Judgment is entered.

28.    This Settlement Agreement and the Letter Agreement described in paragraph 21 (collectively, the "Agreements") are intended by the parties as a final expression of their agreement and as a complete and exclusive statement of the terms thereof, all negotiations, considerations and representations between parties having been incorporated and merged herein, and may not be contradicted by evidence of any prior or contemporaneous agreement, arrangement, understanding, representation or negotiation (whether oral or written) in any proceeding involving or concerning the Agreements. No course of prior dealings between the parties or their agents shall be relevant or admissible to determine the meaning of any of the terms of the Agreements. No representations, undertakings or agreements have been relied upon in the making of the Agreements other than those specifically set forth therein. No agreements between the parties hereto exist other than the Agreements. The Agreements can only be modified in writing executed by all parties hereto.

29.    All of the parties hereto shall be considered to be the drafters of this Agreement, and it shall not be interpreted or construed more favorably for any party.

30.    The parties hereto and each Settlement Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement and accompanying exhibits. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of the release as set forth in paragraph 20 above, including, but not limited to, any suit, action or proceeding by a Settlement Class Member in which the provisions of the release and covenant not to sue are asserted by Farmland as a defense, constitutes a suit, action or proceeding arising out of or relating to this Settlement Agreement and the accompanying exhibits.

31.    The parties and counsel for the parties warrant and represent that counsel for the parties are duly authorized by their clients to execute this Agreement on their clients' behalf.

32.    Class Counsel, the Settlement Administrator, and Defendant may only destroy documents associated with Class Notice and with administration of the Settlement one (1) year after the Effective Date.

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement as of _March 26_, 2007.


_____

Brian P. McCafferty, Esq.
Kenney Lennon & Egan

Blair B. Hanzlik, Esq.
McGuireWoods LLP

3031C Walton Road, Suite 202
Plymouth Meeting, PA  19462
610.940.9099
610.940.0284 (fax)


Michael Hamilton, Esq.
Provost Umphrey Law Firm, LLP
2002 Richard Jones Rd.
Suite C-103
Nashville, Tennessee 37215
615.242.0199

Jairus M. Gilden, Esq.
2711 Eastwood Ave.
Evanston, IL 60201
847.328.8542

Attorneys for Plaintiffs

77 W. Wacker Dr., Suite 4100
Chicago, IL  60601
312.849.8100
312.849.3690 (fax)

Alan K. Cotler, Esq.
Shannon Elise McClure, Esq.
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
215.851.8100

215.851.1420 (fax)

Attorneys for Defendant Farmland Foods, Inc.

29.     All of the parties hereto shall be considered to be the drafters of this Agreement, and it shall not be interpreted or construed more favorably for any party.

30.     The parties hereto and each Settlement Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement and accompanying exhibits. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of the release as set forth in paragraph 20 above, including, but not limited to, any suit, action or proceeding by a Settlement Class Member in which the provisions of the release and covenant not to sue are asserted by Farmland as a defense, constitutes a suit, action or proceeding arising out of or relating to this Settlement Agreement and the accompanying exhibits.

31.     The parties and counsel for the parties warrant and represent that counsel for the parties are duly authorized by their clients to execute this Agreement on their clients' behalf.

32.     Class Counsel, the Settlement Administrator, and Defendant may only destroy documents associated with Class Notice and with administration of the Settlement one (1) year after the Effective Date.

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement as of _____, 2007.


Brian P. McCafferty, Esq.      3-26-07
Kenney Lennon & Egan

Blair B. Hanzlik, Esq.
McGuireWoods LLP

- 26 -

**E-FILED**
Thursday, 03 May, 2007  04:05:05 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| GREGORY CHURCHILL, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Docket No. 4:06-cv-4023 |
| v. | ) Hon. Michael M. Mihm |
| | ) |
| FARMLAND FOODS, INC. | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |
| | ) |

# EXHIBIT 1-A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | | |
|---|---|---|
| **GREGORY CHURCHILL, et al.** | : | |
| **on behalf of themselves and all** | : | |
| **other similarly situated individuals** | : | |
| | : | **Case No. 4:06-CV-4023** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FARMLAND FOODS, INC.,** | : | **CLASS ACTION** |
| | : | |
| **Defendants.** | : | **Honorable Michael M. Mihm** |
| | : | **United States District Judge** |

## PRELIMINARY APPROVAL ORDER

AND NOW, this ___ day of _____, 2007, upon consideration of the parties' Joint Motion for Certification of Settlement Class and Preliminary Approval of Settlement and Class Notice, the Court having reviewed such Motion and the Settlement Agreement and Release ("Settlement Agreement"), with supporting papers and the Court being fully advised thereof, it is hereby ordered that:

1.     A class (the "Class") is provisionally certified for settlement purposes only, comprised of all persons who have been employed as hourly production employees at Farmland Foods, Inc.'s Monmouth plant during any time from October 29, 2003, through February 8, 2007 ("Settlement Period"), and all hourly workers who are employed in the plant as of February 8, 2007 and working in jobs which are closely associated with the production process.

2.     The Court appoints Named Plaintiffs Gregory Churchill, Robert DeLoach, Jonathan Richard, Sandra Crews, Jason Smith, Kim Linneman, Connie Hedges, Elizabeth Bavery, Charles Rowsey, Katie Bobcock, Andrew Wren, Charles Furman, Yvonne Hammond, Tracy Cassiday, Kelly Mize, Kathy Hillier, Conchetta Butler, Danielle Florence, Stacey Burgess,

Michelle Darmer, Kevin Winking, Melissa Miller, Luana Johnson and Robert McIntyre as the representatives of the Class.

3.     The Court appoints Brian P. McCafferty, Esquire, of Kenney Egan McCafferty & Young, Michael Hamilton, Esquire of Provost Umphrey Law Firm, and Jairus M. Gilden, Esquire as Class Counsel ("Class Counsel").

4.     The proposed settlement as set forth in the Settlement Agreement executed by the parties is preliminarily approved as fair, reasonable, and adequate, subject to a hearing for final approval.

5.     A hearing ("Final Approval Hearing") is hereby set for _____ ___, 2007 at __:__ __.m., in Courtroom No. ___ at the Federal Building in Rock Island, Illinois to determine whether the proposed settlement is fair, reasonable and adequate and should be finally approved; to consider an award of attorneys' fees and expenses to Class Counsel; to consider the dismissal of the Complaint; and to consider other related matters.

6.     No later than _____ ___, 2007 ("the Distribution Date"), Defendant Farmland shall distribute the Class Notice and Calculation of Weeks Worked ("Notice") to Employed Settlement Class Members with their regular paychecks.  No later than _____ ____, 2007 (the "Mailing Date"), the Settlement Administrator shall mail by first class mail the Notice, substantially in the form attached as Exhibit __ to the Joint Motion for Preliminary Approval of Settlement, to Formerly-Employed Settlement Class Members at their last known addresses as updated through use of the Lexis Nexis Credit Bureau Scrub.

7.     No later than twenty (20) days after the Distribution Date and Mailing Date, respectively, Defendant Farmland and Settlement Administrator shall cause to be filed with the Clerk of this Court affidavits or declarations of the persons under whose general direction the

distribution and mailing of the Notice to Class Members was accomplished, showing that such distribution and mailings have been made in accordance with this Order.

8.    The form and manner of giving notice to the Class set forth herein, to the extent carried out, is hereby found to be the best notice practicable under the circumstances, and to constitute due and sufficient notice of the settlement and the Settlement Hearing to all persons entitled to receive such Notice as Class Members, in full compliance with due process and the notice requirements of Rule 23(e) of the Federal Rules of Civil Procedure.

9.    Any Class Member who wishes to be excluded from the Class must do so as provided in the Notice no later than _____ (a date which is seventy-five (75) days after the Preliminary Approval Date).  Any person who does not timely request exclusion as provided in the Notice shall be included in the Class and bound by any Final Judgment and Order entered by the Court.

10.    Any Class Member who objects to the Settlement, the class action determination (including the determination of adequacy of representation), the Final Judgment and Order to be entered herein, and/or the application for counsel fees, expenses and/or the incentive award for the Representative Plaintiffs, or who otherwise wishes to be heard, may appear in person or by his or her attorney at the Final Approval Hearing and present any evidence or argument that may be proper and relevant; *provided, however*, that no person other than Representative Plaintiffs, Class Counsel, and counsel for Defendant shall be heard, and no papers, briefs, pleadings or other documents submitted by any such person shall be received and considered by the Court (unless the Court in its discretion shall thereafter otherwise direct, upon application of such person and for good cause shown), unless, no later than _____ (a date which is seventy-five (75) days following the Preliminary Approval Date), such person causes a

- 3 -

letter to be received by the Settlement Administrator, and submitted to the Clerk of this Court, which clearly states (i) his/her name; (ii) his/her address; (iii) his/her intention to object; (iv) his/her social security number.

11.     Any person who fails to object in the manner prescribed above shall be deemed to have waived such objection and shall be forever barred from raising such objection in this action or any other action or proceeding.

12.     The parties will file papers in support of the proposed Settlement and the application for attorneys' fees, expenses and an incentive award for the Representative Plaintiff with the Court no later than _____ _____, 2007.

13.     Pending the Final Approval Hearing, Settlement Class Members are enjoined from bringing or asserting any claim or action that was or could have been asserted in the Action or that arise out of the Released Claims.

14.     The Court reserves the right to adjourn the Settlement Hearing from time to time without further notice by adjournment announced in open court, and to approve the settlement and/or award of attorneys' fees and reimbursement of expenses to Class Counsel and other related matters at or after the Settlement hearing.

15.     This Order shall not be construed or deemed to be a finding of this Court or evidence of a presumption, implication, concession, or admission by Defendants concerning (1) any liability, fault, or wrongdoing by Defendant; or (2) the appropriateness of class certification for any purposes other than settlement.  If the Settlement Agreement is terminated pursuant to its terms, or if the Settlement is not approved or consummated for any reason whatsoever, the Settlement and all proceedings had in connection therewith shall be without prejudice to the *status quo ante* rights of the parties to this action.  In that event, the certification shall be

dissolved *ab initio* and all of the *status quo ante* rights of the parties shall be restored including, but not limited to, Defendant's right to oppose certification of a class and/or the merits of Plaintiffs' claims on any grounds, legal or equitable. Neither the Settlement Agreement, nor any provision contained in the Settlement Agreement, nor any action undertaken pursuant thereto, nor the negotiation thereof by any party, shall be deemed an admission or offered or received in evidence at any proceeding in this action or any other action or proceeding.

BY THE COURT

_____

Michael M. Mihm
U.S. District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| GREGORY CHURCHILL, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Docket No. 4:06-cv-4023 |
| v. | ) Hon. Michael M. Mihm |
| | ) |
| FARMLAND FOODS, INC. | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |
| | ) |

# EXHIBIT 1-B

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS

**IF YOU HAVE BEEN EMPLOYED AS AN HOURLY PRODUCTION EMPLOYEE OF FARMLAND FOODS, INC. ("FARMLAND" OR "COMPANY") AT ITS MONMOUTH, ILLINOIS PORK PROCESSING FACILITY DURING ANY TIME FROM OCTOBER 29, 2003 THROUGH FEBRUARY 8, 2007 OR WERE EMPLOYED WITH FARMLAND IN MONMOUTH AS OF FEBRAURY 8, 2007 AND WORKED IN A JOB CLOSELY ASSOCIATED WITH PRODUCTION YOU COULD GET MONEY FROM A CLASS ACTION SETTLEMENT.**

The United States District Court for the Central District of Illinois ("the Court") authorized this notice.  This is not a solicitation from a lawyer.  This is not a notice that you have been sued.  The $977,000.00 settlement will cover people who either are or were hourly production employees of Farmland in its Monmouth, Illinois pork processing facility during any time from October 29, 2003 through February 8, 2007.  The settlement, subject to court approval, resolves a lawsuit over whether Farmland fully compensated its hourly employees for all time spent putting on, taking off, cleaning, maintaining, and waiting for work-related clothing, gear, and equipment and all time spent traveling between the changing areas and the workers' assigned work areas.  If you are a Class Member, your legal rights are affected by the settlement, regardless of whether you act or do not act.  Read this notice carefully.

### BASIC INFORMATION

You either are or were employed by Farmland as an hourly production employee in its Monmouth, Illinois pork processing facility during any time from October 29, 2003 through February 8, 2007 or you are an hourly employee who is or was employed in the plant as of February 8, 2007 and working in a job which is closely associated with the production process.  The Court caused this notice to be sent to you because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides to approve the settlement. This Notice explains this lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Lawsuit claimed that Farmland violated the federal Fair Labor Standards Act and Illinois law by failing to fully compensate workers in or at its Monmouth, Illinois pork processing facility for all time spent putting on, taking off, cleaning, maintaining, and waiting for work-related clothing, gear and equipment and all time spent traveling between the changing areas and the workers' assigned work areas.  For the purposes of settlement, everyone who fits the following description is a Class Member:  All persons who have been employed as hourly production employees of Farmland Foods's Monmouth, Illinois pork processing facility during any time from October 29, 2003 through February 8, 2007, and all hourly employees who are or were employed in the plant as of February 8, 2007 and working in a job which is closely associated with the production process.

Plaintiffs and Defendants agreed to settle the Lawsuit.  That way, they avoid the cost of a trial, and current and former Farmland production employees can receive compensation.  Attorneys for Farmland and the Plaintiffs met in four separate negotiating sessions over five days in order to settle this case, and extensive negotiations led to the settlement described in this Notice.  Plaintiffs' counsel visited the Farmland plant to observe employees putting on, taking off, cleaning, maintaining, and waiting for work-related clothing, gear, and equipment.  Plaintiffs' lawyers believe that the proposed settlement is fair and reasonable and in the best interest of the Class because the settlement creates a $977,000.00 settlement fund and avoids the considerable risks and delays involved in continuing the Lawsuit.  From Farmland's perspective, although it contends it did nothing wrong, settling now means that Farmland does not have to keep spending money, time, and effort on the Lawsuit when it can give the money to its employees instead and resolve their claims.

### THE SETTLEMENT BENEFITS:  WHAT YOU GET

Farmland has agreed to create a $977,000 fund to settle the Lawsuit.  All of this money will be paid out.  Some portion will be taken from the fund to pay for the cost of notice and settlement administration.  The amounts approved by the Court for Plaintiffs' attorney's fees and expenses for their efforts on behalf of the Class also will be deducted from the fund.  Your share of the settlement fund will depend on a number of factors, including Class Counsel's evaluation of the potential damages, the strength and weakness of each claim for people who worked at a particular date, the length of your employment with Farmland as an hourly production employee, and the work-related clothing, gear or equipment that you wore as part of your job.  After deductions for the cost of notice, settlement administration, Plaintiffs' attorneys' fees and expenses, the remainder of the settlement fund (called the "Net Settlement Fund") will be distributed to Class Members, on a proportional basis, based on the following formula:

Each Class Member who works in production shall receive credit: (i) in the approximate amount of $0.60568 for each day worked from October 29, 2003 through July 31, 2006 in which he/she worked  in a production position at Farmland; (ii) in the approximate amount of $.003697 for every day from August 1, 2006 through February 8, 2007 in which he/she worked  in a production position at Farmland; and (iii) in the amount of $20.00 total for each currently employed Farmland production worker.  Class Members who are not employed in production but work in jobs which are closely associated with production will receive a check in the amount of $20.00 total.

Payments will not be made unless and until the Court grants final approval to the settlement and any possible appeals from such a final approval order have been completed.  If any money is not disbursed, because for example, some Claimants do not cash their

settlement checks in time, the Settlement Administrator shall reimburse Farmland and Class Counsel in equal amounts for the all of the costs of settlement administration (to the extent such funds are left over). Any additional amounts remaining in the Settlement Fund, after reimbursement to Farmland and Class Counsel for settlement administration costs, will be distributed in equal amounts to all settlement class members who are still employed by Farmland on the date 10 days after Farmland and Class Counsel are reimbursed for Settlement Costs. This second distribution will only be made if funds are left over.

If you do not exclude yourself from the settlement, are employed by Farmland when the Settlement becomes final, and are entitled to receive the benefit of the Settlement, you will, to the extent reasonably possible, receive payment from Farmland with an upcoming paycheck. Farmland will withhold all applicable employee payroll taxes at the time this payment is made based on your W-2 Form on file with Farmland.

If you are not employed by Farmland when the settlement becomes final, and are entitled to receive the benefit of the settlement, a check will be sent to you in the mail from the Settlement Administrator. Class Counsel and Farmland cannot provide you with tax advice, so if you have any question about any payment you receive, you should consult your own tax professional.

If you are a current Farmland employee on **[date of preliminary approval]**, you do not need to do anything to be eligible to receive money from the settlement. Unless you exclude yourself from the settlement by following the procedure described below, you will receive payment directly from Farmland as long as you are employed by Farmland when the settlement becomes final. If you are not employed by Farmland when the settlement becomes final, you will be sent a check in the mail from the Settlement Administrator as long as you do not exclude yourself from the Settlement Class. The Court will hold a hearing on **[insert date]** to decide whether to approve the settlement. If the settlement is approved, it is possible there may be an appeal by someone. Please be patient.

Unless you exclude yourself, you are staying in the Class. That means that you will give up any claims relating to the Lawsuit and cannot sue Farmland for failing to fully compensate you or other workers in its Illinois pork processing facility for time spent putting on, taking off, cleaning, maintaining, and waiting for work-related clothing, gear, and equipment and time spent traveling between the changing areas and assigned work areas, or other claims that could have been included in the suit. The full release is contained in the Settlement Agreement, and you should review it if you have any questions.

The United States District Court for the Central District of Illinois is in charge of the case and the case is known as <u>Gregory Churchill, et al., v Farmland Foods, Inc. et al.</u>, Case No. 4:06-CV-4023 ("Lawsuit"). The people who sued are called the "Plaintiffs" and Farmland is called the "Defendant."

## EXCLUDING YOURSELF FROM THE CLASS

If you do not want a payment from this settlement, and instead want to keep your claims and the right to sue Farmland on your own, then you must take steps to get out of the Class. This is called excluding yourself from or opting out of the Class.

**If you decide to exclude yourself from the class, you will need to hire your own lawyer at your own expense. Class counsel cannot and will not represent workers who exclude themselves from the settlement.**

To exclude yourself from the Class you must send a letter by mail saying that you want to be excluded from <u>Gregory Churchill, et al., v Farmland Foods, Inc. et al.</u>, Case No. 4:06-CV-4023. Be sure to include your name, address, telephone number, social security number and your signature. To be valid, an exclusion request must be **received** no later than **[insert date]** by: Farmland Foods, Inc. Settlement, BrownGreer PLC, P.O. Box 85014, Richmond, Virginia 23285.

**If you ask to be excluded from the Class, you will not receive any settlement payment, and you cannot object to the settlement. If you exclude yourself, you will not be legally bound by anything that happens in this Lawsuit.**

The law firms that brought the Lawsuit have been representing you and the other Class Members. These lawyers are called Class Counsel and they are: Brian P. McCafferty from Kenney Egan McCafferty & Young; Michael Hamilton from Provost Umphrey Law Firm and Jairus M. Gilden. You can send any questions to them by contacting the Settlement Administrator at: Farmland Foods, Inc. Settlement, BrownGreer PLC, P.O. Box 85014, Richmond, Virginia 23285.

Class counsel has worked on this case so far without receiving any payments at all for their work or their out-of-pocket case expenses. They will ask the Court for attorneys' fees plus reasonable out-of-pocket case costs and expenses costs up to 33% of the settlement fund, for all of the lawyers that worked on the case. Farmland has agreed not to oppose this request. The Court may award less than the amounts requested. The payments will come out of the settlement fund.

## OBJECTING TO THE SETTLEMENT

If you are a Class Member, you can object to the settlement if there is some part of the settlement you do not like. You can give reasons why you think the Court should not approve it. The Court will consider the views of all objectors. To object, you must send a

letter saying that you object to the settlement.  At the top of your letter objecting to the settlement, write "Notice of Intention to Appear in <u>Gregory Churchill, et al., v Farmland Foods, Inc. et al.</u>, Case No. 4:06-CV-4023."  Be sure to include your name, address, telephone number, your social security number, your signature, and the reasons you object to the settlement.  In order for your objection to be considered by the Court, it must be **received** by the Settlement Administrator at the address set forth below by no later than **[insert date]**: Farmland Foods, Inc. Settlement, BrownGreer PLC, P.O. Box 85014, Richmond, Virginia 23285.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement.  You do not need to attend that hearing, but are welcome to attend if you so desire.

The Court will hold a Fairness Hearing at **[insert date and time]** at the Federal Building in _____, Illinois, Courtroom **[insert]**.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court will listen to people who have made a written request to speak at the hearing.  After the hearing, the Court will decide whether to approve the settlement and how much to pay to Class Counsel.  We do not know how long these decisions will take.  In order to speak at the hearing, you must have sent in a timely objection.  In order for you to speak at the hearing, you must have sent in an objection that was **received** by the Settlement Administrator no later than **[insert date]**. You cannot speak at the hearing if you excluded yourself from the Class.

### IF YOU DO NOTHING

**<u>If you do nothing at all, you will be considered part of the settlement class and you will receive proceeds from the settlement.</u>**

### GETTING MORE INFORMATION

This Notice summarizes the most important aspects of the proposed settlement.  You can get a copy of the entire Settlement Agreement by writing to the Settlement Administrator at Farmland Foods, Inc. Settlement, BrownGreer PLC, P.O. Box 85014, Richmond, Virginia 23285.  **PLEASE DO NOT CALL THE COURT, THE CLERK, OR FARMLAND OR ITS COUNSEL ABOUT THIS SETTLEMENT.**

### INFORMATION ABOUT THE AMOUNT OF MONEY YOU ARE ELIGIBLE TO RECEIVE

**[SPACE FOR BROWNGREER TO PROVIDE EMPLOYEE-SPECIFIC INFORMATION]**

Name/Social Security Number/Employee Number:
Hiring/Termination Dates:
Number of Days Worked for which you are entitled to as a current production employee:
(i) $0.60568 ____; (ii) $0.03697 ____; (iii) $20.00 (current production) ____;
OR (iv) $20.00 (current non-production worker) ___
Total amount due:

**If you ask to be excluded from the Class, you will not receive any settlement payment, and you cannot object to the settlement.**

### CHALLENGING THESE CALCULATIONS

If you wish to challenge the hiring and/or termination dates listed above or the determination of the number of days you worked for any category (i) through (iv), you must send a letter, together with documents showing evidence of an actual hiring or termination date or documents showing the number of months you believe you deserve credit for, to the Settlement Administrator.  Both the letter and documentary evidence must be **received** by the Settlement Administrator no later than _____ **[(20) days after mailing/distribution of the Class Notice]**.  If you do not challenge the hiring and/or termination dates or the number of weeks of credit to which you believe you are entitled to, it will be presumed that Farmland's information is correct.  The Settlement Administrator will resolve all challenges made by you.

**PLEASE DO NOT CALL THE COURT, THE CLERK, OR FARMLAND OR ITS COUNSEL ABOUT THIS SETTLEMENT.**

**E-FILED**
Thursday, 03 May, 2007  04:05:42 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| GREGORY CHURCHILL, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Docket No. 4:06-cv-4023 |
| v. | ) Hon. Michael M. Mihm |
| | ) |
| FARMLAND FOODS, INC. | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |
| | ) |

# EXHIBIT 1-C

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| **GREGORY CHURCHILL, et al.** | : | |
| **on behalf of themselves and all** | : | |
| **other similarly situated individuals** | : | |
| | : | **Case No. 4:06-CV-4023** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FARMLAND FOODS, INC.,** | : | **CLASS ACTION** |
| | : | |
| **Defendants.** | : | **Honorable Michael M. Mihm** |
| | : | **United States District Judge** |

**FINAL JUDGMENT AND ORDER**

This matter having come before the Court for approval of a settlement in this action, the Court having considered all papers filed and proceedings held in connection with said motion, notice of hearing having duly been given in accordance with the Court's Preliminary Approval Order, a hearing having been held on _____ ____, 2007, there being no objections from the class members to the proposed settlement, and good cause appearing therefore, it is this _____ day of _____, 2007,

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Court has jurisdiction over the subject matter of this action and over all parties to this action.

2.    The Notice given to the Class was in compliance with the Preliminary Approval Order and such Notice was the best notice practicable under the circumstances and satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of Due Process.

3.    The Court confirms its appointment of Brian P. McCafferty, Esquire, of Kenney

Egan McCafferty & Young, Michael Hamilton of Provost Umphrey Law Firm and Jairus M.

Gilden as Class Counsel ("Class Counsel").

4.    The March 23, 2007 Settlement Agreement filed with the Court on _____

_____, 2007 (the "Settlement Agreement") was arrived at as a result of arm's-length

negotiations, conducted in good faith by counsel for the parties.  None of the Class Members has

filed an objection to the Settlement.

5.    The Court hereby approves the Settlement set forth in the Settlement Agreement.

The Settlement, as set forth in the Settlement Agreement is, in all respects, fair, reasonable, and

adequate to the Class in light of the risks of establishing liability and damages; the range of

reasonableness of the settlement in light of the best possible recovery; the range of

reasonableness of the settlement in light of all the attendant risks of litigation, including but not

limited to the risks of maintaining a class action through trial and appeal; the complexity,

expense, and likely duration of litigation; the state of the proceedings and the amount of

discovery completed; the recommendations of competent counsel; and the reaction of the class to

the settlement.  The Representative Plaintiffs, Class Members, and Defendant are directed to

consummate the Settlement as provided in the Settlement Agreement.

6.    The Court hereby dismisses with prejudice and on the merits the lawsuit under the

above caption.

7.    By this Order and the Judgment entered pursuant to it, the Court approves the

release as set forth in Paragraph 20 of the Settlement Agreement.  Therefore, all Plaintiffs and

Class Members have released and do release the Released Parties as follows:

20.    For the consideration stated herein, the receipt, adequacy and
sufficiency of which are hereby acknowledged, Plaintiffs agree that the Lawsuit

- 2 -

shall be dismissed with prejudice, and Plaintiffs and all Settlement Class Members who do not timely exclude themselves from the Settlement Class, including any other person acting on their behalf or for their benefit, and including all Settlement Class Members whose mail is returned as Undeliverable Mail for any reason and for whom the United States Postal Service does not provide forwarding address information or whose address cannot be updated with the Lexis Nexis Credit Bureau Scrub (collectively "Releasors") hereby releases, covenants not to sue, remises and forever discharges Defendant, as well as its predecessors and successors in interest and present and former affiliates, parents, subsidiaries, insurers, officers, directors, agents, employees, members, shareholders, general partners, limited partners, beneficiaries, representatives, heirs, attorneys, and assigns (including, without limitation, any investors, trusts, or other similar entities) (collectively, "Releasees") from any causes of action, claims, debts, contracts, agreements, obligations, liabilities, suits, claims, damages, losses, or demands whatsoever ("Claims"), in law or in equity, known or unknown at this time, suspected or unsuspected, which Plaintiff and the Class now have or ever had, or may in the future have, against the Releasees, under any legal theory, including, but not limited to, all claims under local, state or federal law, including claims for violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b), the Illinois Minimum Wage Law, and the Illinois Wage Payment Collection Act, or other acts, omissions or claims, and for any general, special, consequential and punitive damages specifically related to such claims, as well as any claims for disgorgement, restitution, injunctive relief, penalties, attorneys' fees and/or costs of suit in connection with such claims, whether or not alleged, arising out of the allegations in or subject matter of the Complaint from October 29, 2003 to the date of this Settlement Agreement. This release is conditioned upon the final approval of this Settlement Agreement by the Court and upon Plaintiffs, Class Counsel, and Defendant meeting its obligations herein.

8.    The persons, named on the list provided to this Court by the Settlement Administrator, who served a timely request for exclusion from the certified class in this Action shall not be subject to the provisions of Paragraphs 6 and 7 of this Final Order and Judgment and shall not be entitled to participate in the Settlement reached between the parties and are hereby excluded from the certified class.

9.    Without affecting the finality of the Judgment entered pursuant to this Order, the Court hereby reserves and retains continuing jurisdiction over the Settlement, including all matters relating to the administration and effectuation of the Settlement Agreement. Each party

and Class Member is hereby deemed to have submitted irrevocably to the jurisdiction of this

Court for any suit, action, proceedings, or dispute arising out of or relating to this Order or the

Settlement.

       10.     Each Plaintiff and Class Member is hereby enjoined from prosecuting any

claim(s) that are released pursuant to Paragraph 7 of this Order.  Without affecting the finality of

this Judgment, the Court hereby reserves and retains jurisdiction to enforce this injunction.

       11.     Class Counsel are hereby awarded counsel fees (to be paid by a portion of the

Settlement Fund as prescribed by the Settlement Agreement) of $_____.  The Court also

approves Class Counsel's litigation costs and expenses of $_____, plus any additional

amounts subsequently reasonably incurred by Class Counsel in connection with implementation

of this Agreement (as provided in Paragraph 4 of the Settlement Agreement).

                                  BY THE COURT

                                   _____ _____

                                   HONORABLE MICHAEL M. MIHM
                                   UNITED STATES DISTRICT JUDGE

**E-FILED**
Thursday, 03 May, 2007  04:06:15 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| GREGORY CHURCHILL, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Docket No. 4:06-cv-4023 |
| v. | ) Hon. Michael M. Mihm |
| | ) |
| FARMLAND FOODS, INC. | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |
| | ) |

# EXHIBIT 1-D

1

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | | |
|---|---|---|
| **GREGORY CHURCHILL, et al.** | : | |
| **on behalf of themselves and all** | : | |
| **other similarly situated individuals** | : | |
| | : | **Case No. 4:06-CV-4023** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FARMLAND FOODS, INC.,** | : | **CLASS ACTION** |
| | : | **Honorable Michael M. Mihm** |
| **Defendant.** | : | **U.S. District Judge** |
| | : | |

## STIPULATION OF FACTS

**IT IS HEREBY STIPULATED AND AGREED**, by, between and among Gregory Churchill and the Representative Plaintiffs, in their individual and representative capacities ("Plaintiffs"), and Farmland Foods, Inc. (together with all of parents, affiliates, divisions, subsidiaries, successors, and predecessors thereof, as more fully defined herein, collectively "Farmland"), through their duly authorized counsel, that

**WHEREAS**, the First Amended Class Action Complaint assert claims alleging that Farmland failed to fully compensate workers in its Monmouth, Illinois plant for all time spent donning, doffing, cleaning, maintaining, and waiting to receive work-related gear, clothing, and equipment, and for all time spent traveling between changing areas and work stations ("donning, doffing and related activities");

**WHEREAS**, Farmland reengineered its fabrication floor on or about July 31, 2006 ("Plant Reengineering") to reduce the time that employees spent engaging in donning, doffing and related activities;

**WHEREAS**, in the course of informal discovery, Defendant responded to Plaintiffs'

requests for information, and Defendant produced detailed time studies relating to the Farmland

plant evaluating the time employees spend engaged in donning, doffing and related activities for

which Plaintiffs allege that they are entitled to additional compensation;

**WHEREAS**, in connection with settlement negotiations, Plaintiffs' counsel visited the

Farmland plant on December 7, 2006, in order to witness the proposed class members engaging

in donning, doffing and related activities while the Farmland plant was in full operation;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by the parties

that the current compensation practices at Farmland begun at the time of the Plant Reengineering

are in compliance with all local, state and federal laws, and the amount of compensation

currently paid to employees to compensate them for time spent engaged in donning, doffing, and

related activities is adequate and fully compensates employees.

**IN WITNESS WHEREOF**, the undersigned have executed this Stipulation of Facts.

_s/ Brian P. McCafferty_
Brian P. Kenney, Esq.
Brian P. McCafferty, Esq.
Eric L. Young, Esq.
Philip A. Downey, Esq.
Kenney Lennon & Egan
3031C Walton Road, Suite 202
Plymouth Meeting, PA  19462
610.940.9099
610.940.0284 (fax)

Attorneys for Plaintiffs

Dated:  May 3, 2007

_s/ Blair B. Hanzlik_
Blair B. Hanzlik, Esq.
McGuireWoods LLP
77 W. Wacker Dr., Suite 4100
Chicago, IL  60601
312.849.8100
312.849.3690 (fax)

Of Counsel:
Alan K. Cotler, Esquire
Shannon E. McClure, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100
(215) 851-1420 (fax)

Attorneys for Defendant Farmland Foods, Inc.
Dated:  May 3, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| GREGORY CHURCHILL, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Docket No. 4:06-cv-4023 |
| v. | ) Hon. Michael M. Mihm |
| | ) |
| FARMLAND FOODS, INC. | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |
| | ) |

# EXHIBIT 2

# KENNEY LENNON & EGAN, P.C.

Kenney Lennon & Egan ("KLE") is a Philadelphia based litigation law firm. KLE has a national practice focused in the areas of Fair Labor Standards Act litigation, class action litigation, securities fraud, False Claims Act litigation, employment litigation, consumer protection, anti-trust, products liability and commercial litigation. KLE also maintains a general practice to meet the needs of its diverse client base.

KLE Senior Partner Brian P. Kenney is a nationally recognized expert in the area of False Claims Act litigation. He represents whistleblowers throughout the country in qui tam cases and consumer class actions relating to fraud. Mr. Kenney also maintains a national practice in corporate investigations. Prior to entering private practice, Mr. Kenney served as an Assistant United States Attorney in the Eastern District of Pennsylvania. He has over 20 years of trial experience in federal and state courts, has served as a member of the Pennsylvania Disciplinary Board, and is a 1980 cum laude graduate of the Georgetown University Law Center.

KLE Senior Partner Gerard P. Egan has over thirty years of trial and appellate experience. Mr. Egan focuses his practice in the areas of corporate investigation, criminal defense, False Claims Act litigation, personal injury, civil rights, and commercial litigation. Prior to entering private practice, Mr. Egan worked as a Special Agent for the Criminal Division of the Internal Revenue Service. Subsequently, he served as a federal prosecutor for eleven (11) years. He was an Economic Crime Enforcement Specialist for the U.S. Attorney's Office in Philadelphia and as an Assistant United States Attorney for the Eastern District of Pennsylvania. Former Pennsylvania Governor Robert P. Casey appointed Mr. Egan as a member of the Judicial Conduct Board.

KLE Partner Eric L. Young has a diverse practice including shareholder litigation, securities fraud litigation, labor and employment law, catastrophic injury litigation, and commercial litigation. Mr. Young is a member of the Bars of the Commonwealth of Pennsylvania, the United States Supreme Court, the United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, and the United States District Court for the Middle District of Pennsylvania. His professional associations include the Pennsylvania Bar Association, Philadelphia Bar Association, and the American Trial Lawyers Association. Mr. Young is also active in numerous community affairs and was recently nominated for the National MS Society Leadership Class of 2004. Mr. Young received his B.A. in Political Science in 1992 from the University of Pittsburgh, and his J.D. in 1999 from the Widener University School of Law's Evening Division, where he was a member of the Moot Court Honor Society.

KLE Partner Brian P. McCafferty specializes in Civil Litigation, Class Action Litigation, Labor and Employment Law, and Fair Labor Standards Act Litigation. Mr. McCafferty is also active in representing the firm's whistleblower clients and has experience in Products Liability and Pharmaceutical Products Liability Litigation. Mr. McCafferty is licensed to practice in all courts in Pennsylvania and the District of Columbia. He is also admitted to practice before the United States Court of Appeals for the Third, Fourth and Fifth Circuits; the United States District Court for the Eastern and Middle District of Pennsylvania; the United States District Court for

the District of Columbia; and the United States District Court for the Central District of Illinois and the Western District of Michigan.

Prior to joining KLE, Mr. McCafferty was the managing partner of the Philadelphia office for Provost Umphrey Law Firm, a national class action law firm based in Beaumont, Texas. Mr. McCafferty currently serves as Plaintiffs' Liaison Counsel in the Philadelphia Court of Common Pleas Mass Tort Program for Silica Products Liability Litigation. Mr. McCafferty also served as a legal assistant to President Judge James G. Colins of the Commonwealth Court of Pennsylvania from 1992-1994. Mr. McCafferty received his B.A. from the University of Notre Dame in 1989. He also received a J.D. from the University of Notre Dame in 1992, where he was a Joseph White Scholar and the Lead Articles Editor of the Notre Dame Journal of Law Ethics and Public Policy.

KLE Associate Meredith Deming specializes in False Claims Act litigation and general civil litigation. Ms. Deming represents whistleblowers throughout the country in qui tam cases and consumer class actions relating to fraud. Before joining KLE, Ms. Deming engaged in a diverse practice concentrated on commercial litigation, including securities fraud; fiduciary duties of corporate management of limited partnerships and limited liability companies; commercial contract preparation and interpretation; bankruptcy, legal malpractice. She has appellate experience in the Court of Appeals for the Third Circuit in complex commercial litigations including federal civil rights cases. Ms. Deming also gained extensive experience in health care litigation, including coverage issues, duties of third party administrators, commercial contracts and insurance defense. Ms. Deming received her J.D. from Villanova University in 1998 and graduated magna cum laude from James Madison University in 1993, earning her B.S. as a political science major and an economics minor. Ms. Deming is admitted to practice before the Pennsylvania Supreme Court; the United States Court of Appeals for the Third Circuit; and the United States District Court for the Eastern District of Pennsylvania.

Philip A. Downey is Of-Counsel to KLE. Mr. Downey specializes in employment litigation, particularly pursuant to the Fair Labor Standards Act, construction law and criminal law. Mr. Downey is a graduate of DePaul Law School in Chicago, Illinois and is admitted to the Bar of the Commonwealth of Pennsylvania and the State of Kansas.

## PROVOST UMPHREY LAW FIRM RESUME

The Provost & Umphrey Law firm was founded in 1969. The Firm has represented plaintiffs across the nation in the areas of asbestos exposure, toxic torts, antitrust, securities, civil rights, employment, ERISA, environmental, complex personal injury cases including those arising from the workplace, products liability and government contract fraud.

Since its inception, the Provost & Umphrey Law Firm has prosecuted numerous class actions, including: Jenkins v. Raymark Indus., Inc., 109 F.R.D. 269, 273 (E.D. Tex. 1985), aff'd, 782 F.2d 468 (5th Cir. 1986); Cimino v. Raymark Indus., Inc., 151 F.3d 297 (5th Cir. 1998); and Smith v. Texaco, Inc., 88 F.Supp.2d 663 (E.D. Tex. 2000). The Provost & Umphrey Law Firm was also co-counsel for a lawsuit brought on behalf of the State of Texas against major tobacco companies resulting in a multi-billion dollar payment to the State of Texas. State of Texas v. The American Tobacco Co., 14 F.Supp.2d 956 (E.D. Tex. 1997). Additionally, the Provost & Umphrey Law Firm successfully brought a *qui tam* lawsuit on behalf of the United States against seventeen oil companies requiring them to pay the government hundreds of millions of dollars for the underpayment of oil royalties due the federal government. U.S. ex rel. Johnson v. Shell Oil Co., 33 F.Supp. 2d 528 (E.D. Tex. 1999); U.S. ex rel. Johnson v. Shell Oil Co., 26 F. Supp.2d 923 (1998); and U.S. ex rel. Johnson v. Shell Oil Co., 183 F.R.D. 204 (E.D. Tex. 1998). The firm has successfully represented the Plaintiff class in the following class action litigation:

-$23 billion dollar settlement of a class action brought on behalf of the State of Texas against all major tobacco companies in the United States. Firm served as lead counsel.

-$457 million settlement as co-counsel in a class action lawsuit against Waste Management, Inc. alleging securities fraud, a settlement which at the time ranked among the largest of its kind

-$302 million in settlements (to date) in the largest *qui tam* lawsuit of its kind brought under the False Claims Act on behalf of the United States of America, alleging oil royalties due the United States for oil production on federal and Indian owned lands were underpaid by 18 of the largest American oil companies. Firm served as lead counsel.

-$285 million settlement as co-counsel in a class action lawsuit against El Paso Gas, Inc. alleging securities fraud.

-$61.5 million settlement in *qui tam* whistleblower lawsuit brought on behalf of the United States of America against Boeing Co. alleging the use of defective material in gears for Army Chinook Transport helicopters resulting in the loss of Marine soldiers' lives and several helicopters. Firm served as co-lead counsel.

-$44.5 million settlement as co-counsel in a class action lawsuit against Dupont Merck Pharmaceutical Company alleging violations of various state consumer protection laws in the sale of an anticoagulant drug.

-$32 million settlement as co-counsel in a Federal Antitrust case involving bid rigging and price fixing throughout the State of Texas.

-$27.5 million in settlements against Fortune 500 companies for failure to pay workers in compliance with Federal Fair Labor Standards Act.

-$25 million settlement as co-counsel in class action lawsuit brought by Third Party Payors against Mylan Laboratories, Inc. alleging violations of various state antitrust and consumer protection laws.

-$25 million awarded to the City of Port Arthur and other Texas cities in its class action lawsuit against Southwestern Bell Telephone Co. involving underpayment of franchise fees owed to the class member cities. Firm served as lead counsel.

-$22.5 million settlement as lead counsel in a FLSA suit against a meat processing company for unpaid wages.

-$20 million settlement as co-lead counsel of a national class action security fraud suit.

-$12 million settlement in which Provost Umphrey successfully represented a class of 57 Texas Municipalities against one of the largest utility service providers in the country. The case involved enforcement of the cities' franchise ordinances providing for the payment of frees for the use of streets.

-$9 million settlement on behalf of 200 plaintiffs against 12 to 14 petrochemical companies alleging mismanagement of gasoline distribution facilities.  Injuries included illness, property devaluation and loss profits resulting from soil and ground water contamination.

-$5.7 million settlement in Travis County, Texas in a case alleging ground water contamination by a major oil company.

-$3.5 million settlement resulting from a complex multi-party death and property damage claim involving the collapse of the Jefferson County Airport roof.

-$1.5 million settlement as counsel of a Tennessee State class action against various chemical companies alleging price fixing in the sale of the food preservative, potassium sorbate.

-$1.1 million settlement as a result of a pipeline rupture case which caused plaintiffs to be driven from their homes.

Today, the Provost & Umphrey Law Firm continues to represent individual clients through class action, *qui tam* lawsuits, and other complex legal mechanisms designed to protect individuals damages by sophisticated defendants with vast resources. As the Honorable Howell Cobb of the Eastern District of Texas remarked while certifying a class action prosecuted by the Provost & Umphrey Law Firm on behalf of individual employees for race discrimination:  "The firm has a strong national reputation for excellence in class actions and undoubtedly has the resources to pursue this [class action] suit."  Smith v. Texaco, Inc., 88 F.Supp.2d at 678.  Following is the curriculum vitae of the specfic Provost Umphrey lawyer who will be acting on behalf of the firm in seeking appointment as class counsel in this case.

# WILLIAM MICHAEL HAMILTON
**2002 Richard Jones Road, 103-C**
**Nashville, Tennessee 37215**
**(615) 242-0199**

**Personal:**          Married; two children: ages 19 and 14
                       Hobbies include bicycling, running and travel

**Employment:**        **Provost Umphrey Law Firm, L.L.P.**
                       **Nashville, Tennessee**
                       **Resident Partner (1998-Present)**
                       Supervised three lawyers and six staff members;
                       engaged in all aspects of law practice including client counseling,
                       discovery, motion practice and trials before federal and
                       state courts and administrative agencies in the areas of labor
                       and employment, unfair trade practice, ERISA and toxic tort
                       law on behalf of organizations, individuals and employee
                       benefit plans.  Also, served as Independent Fiduciary to various
                       employee welfare benefit plans.

                       **Agee Allen, P.A.**
                       **Nashville, Tennessee**
                       **Resident Partner (1997)**
                       Supervised two lawyers and three staff members;
                       engaged in all aspects of law practice including client counseling,
                       discovery, motion practice and trials before federal and
                       state courts and administrative agencies in the areas of
                       labor and employment and ERISA law on behalf of organizations,
                       individuals and employee-benefit plans; merged office with
                       Provost Umphrey Law Firm, L.L.P.

                       **Gardner, Middlebrooks, Fleming & Hamilton, P.A.**
                       **Mobile, Alabama**
                       **Partner (1993-1996)**
                       Engaged in all aspects of law practice including client counseling,
                       discovery, motion practice and trials before federal courts
                       and administrative agencies in the areas of  labor and employment,
                       consumer fraud, ERISA and toxic tort law on behalf of
                       organizations, individuals and employee-benefit plans.

                       **United Paperworkers International Union, AFL-CIO, CLC**
                       **Nashville, Tennessee**
                       **Associate General Counsel (1981-1992)**
                       Supervised two lawyers and two staff members; trained
                       field representatives in legal obligations and engaged in all aspects
                       of law practice including client counseling, discovery, motion

practice and trials before federal and state courts and administrative agencies in the areas of labor, employment and ERISA law on behalf of a labor organization representing 250,000 employees.

**Kaplan, Brewer & Bilheimer, P.A.**
**Little Rock, Arkansas**
**Of Counsel (1979-1992)**
Engaged in the practice of general civil litigation for approximately two years in Little Rock and later served in an advisory capacity to the firm in connection with employment law matters.

**National Labor Relations Board**
**Washington, D.C.**
**Counsel to Board Member Murphy (1977-1979)**
Advised Member Murphy on the disposition of unfair labor practice and representation cases before the Board for resolution and drafted Decisions and Orders for issuance by the Board.

| | |
|---|---|
| **Education:** | **University of Denver**<br>Bachelor of Arts; 1974<br><br>**University of Arkansas School of Law**<br>Juris Doctor; 1977 |
| **Admitted:** | Arkansas, 1977<br>Tennessee, 1983<br><br>Admitted to the following Courts:<br>United States District Courts for the Eastern District of Arkansas; Middle, Eastern and Western Districts of Tennessee; Western District of Michigan; Middle District of Illinois; Northern District of Iowa; and District of Nebraska<br>U.S. Courts of Appeal for the 3rd, 4th, 5th, 6th and 8th Circuits |
| **Memberships/<br>Organizations:** | Fellow: The College of Labor and Employment Lawyers<br>American Association for Justice<br>Tennessee Trial Lawyers Association<br>Development Committee, Second Harvest Food Bank<br>  of Middle Tennessee<br>Martindale-Hubbell Peer Rating: A V |

**Notable
Cases:**

***Darrell Sue Robins, et al. vs. Saturn Corporation et al.
No 1-97-0054***
Lead counsel for two of the defendants in 77 consolidated
cases brought pursuant to the Americans With Disabilities Act.
After two week jury trial Judge granted clients judgment as a
matter of law.

***UPIU, et al. vs. Champion International Corp.*, 908 F2d 1252
(5th Circuit 1990)**
Co-counsel for retirees in an ERISA class action
arising from unilateral changes in a contractually vested
retiree medical benefit program resulting in the reinstatement of
full benefits.

***ITT Rayonier, Inc.*, 305 NLRB No. 41 (1991)**
Lead counsel for labor organization in NLRB unfair labor practice
proceeding resulting in a backpay award of 4.5 million dollars to
papermill employees.

***Orlando's Bakery, et al. vs. Nutranova Nutrition Specialties
and Food Ingredients, GmbH, et al.***
**Davidson County, Tennessee Chancery Court No. 99-560-II**
Co-counsel for class of Tennessee consumers in an action arising
out of the price fixing of potassium sorbate, a food preservative.
Settlement resulted in a $1.5 million dollar recovery for
Tennesseans including a Cy Pres award of $577,000 to a local
charity.

***Russell Price, et al. vs Ciba Geigy Corp.***
**United States District Court, Southern District of
Alabama, No. 94-647-CB-5**
Co-counsel in product liability action on behalf of
nationwide class of end users of Galacron, a pesticide linked to
bladder cancer. Settlement established medical monitoring
program and medical damages fund valued in excess of 120
million dollars.

***Hamilton, et al. v Carell***
**243 F.3d 992 (6th Cir., 2001)**
Served as Independent Fiduciary to an ERISA Health and Welfare
Plan; investigated and brought action against Trustees and various
parties in interest arising from imprudent investments in derivative

mortgage backed securities; settlement with trustees and parties in interest; Defense Judgment for Carell.

***Marvin Goldfarb, et al. v. El Paso Corporation, et al.***
**U.S.D.C. (S.D. Texas), Civil Action No. H-02-2717**,
Co-counsel in this class action securities litigation brought pursuant to the Securities Act of 1933 and the Securities Exchange Act of 1934, involving materially false and misleading SEC filings and statements; Settlement of $285 million.

***In re: Waste Management, Inc. Securities Litigation***
**U.S.C.C. Civil Action  No. H-99-2183 (S.D. Texas)**
Co-counsel for lead Plaintiff, Connecticut Retirement Plans and Trust Funds in this securities class action which settled for $457 million.

***Craig Hootman, et al. v. Excel Corporation, et al.***
**U.S.D.C., (S.D., IA), Civil Action No. 4-98-CV-90538**
Co-counsel for Plaintiffs who commenced collective actions pursuant to the Fair Labor Standards Act for unpaid overtime resulting in a settlement of $22.5 million.

***Sykes v. Matter, et al.***
**U.S.D.C. (M.D. Tenn) Civil Action No. 3-02-0979**
Served as Independent Fiduciary/Special Master for a profit sharing plan;  Reviewed a settlement with plan fiduciaries involving alleged imprudent investments for purposes of determining qualification for a U.S. Department of Labor Prohibited  Transaction Class Exemption.